## SPARKS v. NATIONAL MASONIC ACC. ASS'N.

### (Circuit Court, S. D. Iowa, C. D. February 6, 1896.)

1. **JURISDICTION—FOREIGN INSURANCE COMPANIES—SERVICE OF PROCESS.**

    When, by the statute of a state, an insurance company, transacting business in such state, is required to file with a designated officer of that state a written appointment of such officer as the person upon whom process, directed against such company, may be served, such officer becomes, from the fact of its so transacting business therein, the representative of the company with regard to the service of such process, irrespective of whether such appointment has been so filed or not.

2. **SAME.**

    A statute of Missouri (Rev. St. 1889, § 5912) provides that any insurance company, not incorporated by that state, desiring to transact business by any agent or agents in the state, shall first file with the superintendent of the insurance department a power of attorney, authorizing him to receive service of process for the company; that service of process upon such superintendent shall be valid and binding, so long as the company shall have any policies outstanding in the state; and that, if such company shall fail to make such appointment, it shall forfeit the right to do business in the state. The general agent and a soliciting agent of the M. Association, an Iowa insurance company, during the months of April and May, 1892, solicited insurance for that company in several towns in Missouri. They forwarded to the company 66 applications for policies, all dated in Missouri, stating the residences of applicants and beneficiaries as in Missouri, and all accompanied by fees, receipts for which, dated in Missouri, and containing an agreement to refund if no policies were issued, were given to the applicants. The policies were mailed by the company from Iowa to the applicants in Missouri, and, from the time of the issue of the policies until 1895, the dues thereon were collected by local collectors, in the various Missouri towns, who gave receipts for such dues, dated in Missouri, on forms furnished by the company. The M. association had never formally authorized the soliciting of insurance in Missouri, nor filed the power of attorney required by the Missouri statute; but the records of the company gave full knowledge to the board of directors, of whom the general agent who solicited the insurance was one, of the solicitation of such insurance and the issue of the policies in Missouri. Plaintiff brought an action against the M. Association, on one of the policies so issued, in a Missouri court. Process was served on the superintendent of insurance, and judgment was obtained by default, on which plaintiff afterwards brought suit in a federal court in Iowa. The defendant pleaded that the Missouri court had no jurisdiction. *Held,* that the M. Association was doing business in Missouri, within the meaning of the statute, and having thereby asserted a compliance with the laws of the state permitting it to do so, was estopped to set up that it had not authorized the superintendent of insurance to receive service of process, in order to defeat the jurisdiction of the court by which the judgment was rendered, and, accordingly, that the service on the superintendent was sufficient.

Cummins & Wright, for plaintiff.

Clark Varnum, for defendant.

WOOLSON, District Judge. The plaintiff, a citizen of the state of Missouri, brings this action against defendant, a corporation organized under the laws of the state of Iowa, upon a judgment re-

covered in her favor and against defendant. The record of said judgment, attached to the petition, and by duly-certified copy introduced in evidence, is as follows:

"State of Missouri, County of Johnson.

"Be it remembered that, at a regular term of the circuit court within and for the Seventeenth judicial circuit of the state of Missouri, begun and holden within and for the county of Johnson, in the state aforesaid, at the courthouse in the city of Warrensburg, on the 9th day of October, A. D. 1893, the following, among other proceedings, were had, made, and entered of record on the eighteenth judicial day of said term, it being the 25th day of November, A. D. 1893, to wit:

"Nannie R. Sparks, Plaintiff, v. The National Masonic Accident Association, of Des Moines, Iowa, Defendant.

"Now, at this day comes the plaintiff, by her attorney, and defendant, though duly summoned according to law, and three times solemnly called, comes not, but makes default; and this cause, coming on to be heard, is taken up and submitted to the court for trial upon the pleadings and the evidence of the plaintiff; and, after hearing the pleadings and the evidence, and being fully advised in the premises, the court doth find the issues for the plaintiff; and, being requested by the plaintiff to make a finding of facts, the court doth find the facts to be: That the defendant is now, and was at all times hereinafter mentioned, a corporation duly organized and existing under the laws of the state of Iowa, and doing a life accident insurance business in the state of Missouri; that personal service was had upon defendant in accordance with the laws of this state, as provided for by section 5912 of the Statutes of 1889, by serving the writ, with a copy of the petition, upon the superintendent of the insurance department of this state, the person authorized by law to receive such service, more than thirty days before the first day of this term. The court further finds that, on the 14th day of May, 1892, defendant duly issued to Samuel P. Sparks, late of Warrensburg, Missouri, then husband of plaintiff, since deceased, in his lifetime, for the benefit of this plaintiff, then his wife, now his widow, in case of accidental death, its certain benefit certificate of insurance, herein sued on, numbered 4,835, for five thousand dollars, under the hand of its president and secretary, with its corporate seal affixed; that said defendant, in and by said certificate, agreed and bound itself to, and thereby did, constitute and accept said Samuel P. Sparks as a benefit member of said association, and thereby agreed and bound itself to pay, in ninety days after there shall have been furnished to said association satisfactory proofs of the death of said member, Samuel P. Sparks, resulting from any bodily injury, during the life of this certificate, through external, violent, and accidental means, which, independently of all other causes, resulted in death within ninety days from the date of said injury, to this plaintiff, as the beneficiary named in said certificate, the sum of five thousand dollars ($5,000), unless said sum should exceed the amount to be realized by said association from one quarterly payment of two dollars, made and collected from all its members at the date of said accident, and in that event to pay to the plaintiff the sum so to be realized from said quarterly payments, in consideration of the payment to it by the said member, Samuel P. Sparks, the membership fee of five dollars, and in further consideration of the warranties in the application of the said Sparks for this certificate, which application is indorsed upon said policy, and in further consideration of such future payments and conditions of, or as may be required under, the articles of incorporation and by-laws of said association, and in further consideration that he accepts said certificate subject to all the conditions indorsed thereon. The court further finds that Samuel P. Sparks duly paid the defendant the said sum of five dollars, membership fee, upon receipt of said certificate, and paid all further payments and assessments demanded of or required of him by the defendant, or that are provided for by said certificate, or required by the articles of incorporation or the by-laws of said association, as soon as the same became due; that said Samuel P. Sparks departed this life on the 16th day of September, 1892; that his death was the result of a bodily injury, which was effected through external,

violent, and accidental means, which, independently of 'all other causes, brought about his death immediately, to wit, the result of a deep gash cut in his throat, with a razor, in his own hands, while he, the said Samuel P. Sparks, was insane, mentally deranged, and wholly incapable of forming any mental design; that his death was not the result of any exposure to unnecessary danger, nor medical nor surgical treatment, nor of the violation of law or the rules of any corporation, nor of taking poison, nor of inhaling gas, nor disease, nor bodily infirmities. The court further finds that said Samuel P. Sparks, from the time of the issuance of said certificate to the date of his death, kept all the covenants, performed all the conditions, complied with all the rules and requirements provided for by said certificate, his said application, and the articles of incorporation and by-laws of said association. The court further finds that, immediately after the happening of the accident and injury which resulted in the death of the said Samuel P. Sparks, the insured under said certificate, plaintiff gave notice, in writing, to the defendant, at its home office, in Des Moines, Iowa, of the happening of said accident, the result of said injury, the particulars thereof, and the death of said Samuel P. Sparks, giving the time and place of his death and her relationship to him and right to claim under said certificate. The court further finds: That, on the 18th day of November, 1892, plaintiff caused to be made, furnished, and forwarded to said defendant, at its home office, at Des Moines, Iowa, satisfactory proofs of the said accident and injury to said member Samuel P. Sparks; the time, place, and manner in which it occurred; the time, place, and manner of his death resulting therefrom,—showing valid claim of this plaintiff for the sum of five thousand dollars on account of the accidental death of said Samuel P. Sparks, resulting from said injury, under the terms of said certificate. That said proofs comprised a sworn certificate of the attending physician, of the attending undertaker, of the attending clergyman, of the claimant, and of a disinterested friend, and were made upon and in accordance with the blanks furnished by said association. That said proofs were received, accepted, and retained by defendant, on the 21st day of November, 1892. The court further finds that the sum realized by said association from one quarterly payment of two dollars, made and collected from all its members at the date of said accident, would amount to more than the sum of five thousand dollars. The court further finds that, by reason of the premises, plaintiff is entitled to have, receive, and recover from defendant association, on the 21st day of February, 1893, ninety days after the receipt of said proof by said defendant, the sum of five thousand dollars on account of said certificate; but that said defendant then and ever since has failed, refused, and neglected to pay this plaintiff this sum, or any part thereof, although often requested so to do. Wherefore it is considered and adjudged by the court that the plaintiff do have and recover of and from the defendant the said sum of five thousand dollars, with six per cent. interest thereon from said February 21, 1893, amounting at this date to five thousand two hundred and twenty-five dollars, with interest thereon from this date till paid at the rate of six per cent. per annum, together with her costs in this behalf expended, and have execution therefor."

The defense to said judgment is that the court rendering the same was without jurisdiction of defendant, and therefore the judgment is void. More particularly stated, defendant asserts that the defendant association never appeared in said action wherein said judgment was rendered; denies it was ever served with process, or summoned to appear in said action or in said court; says that it never had an office in the state of Missouri, and never kept or maintained any agents or officers in said state; never appointed the superintendent of the insurance department of the state of Missouri, or any other person within said state, as a person on whom process or service of process might be made or served on defendant within said state; never applied to said insurance department to be admitted to do business within said state; has never been, by any of its officers or agents, or any person upon whom service of process could be

lawfully made, or who was appointed thereto, within said state of Missouri; that no person, authorized to accept service of process for defendant, or to have service of process made upon him, for defendant, was ever cited to appear, or personally served or notified, with summons or process, or did appear for defendant in said action. Defendant also avers that said action was begun by plaintiff in said Missouri court and judgment therein obtained through the fraud of plaintiff, who then well knew the facts to be as stated above, and who instituted and prosecuted said action in said court; and that plaintiff, for the purpose of preventing defendant from making therein any defense, well knowing that said court had no jurisdiction to hear and try said case, caused notice or summons to be served on said superintendent of insurance, and refused to have the same served on defendant, or any notice whatever to be given defendant of the pendency thereof, etc.

Under the pleadings and proof herein, the sole question to be herein determined is, did the circuit court of Johnson county, Mo., by the service of process in said action upon the superintendent of the insurance department of that state,—as found and recited in the judgment above given,—obtain jurisdiction over defendant in said action? The evidence herein shows defendant's principal place of business—the office from which all its policies (or certificates) of insurance issue—is at Des Moines, Iowa; that its business is issuing, etc., life accident insurance; that no action was ever taken by its board of directors or executive committee (which are by its constitution and by-laws charged with conducting its business) authorizing any application to be made to the proper authorities of the state of Missouri for authority to do business in said state; that defendant had or kept no office for transaction of business in said state; and that defendant did not personally appear in said action. But the proof does show that at least two of its agents—one its general agent, and the other a soliciting agent—were, during a part of the months of April and May, 1892, in said state of Missouri, soliciting insurance for defendant; that said agents, at different places in said state, solicited and procured, from residents of said state, applications for insurance with defendant; that the general method in which this business was carried on was the method pursued in the case of decedent, Sparks, viz.: The agent, having procured, at Warrensburg, Mo., the assent of the applicant, took from him a written application, signed by him, in which were stated the name, residence, etc., of applicant, his occupation, amount of insurance desired, name and residence of beneficiary, name and location of the Masonic lodge to which applicant belonged, and some other particulars relating to insurance. Thereupon the agent signed and gave to the applicant a receipt, on blanks furnished for that purpose by defendant, the receipt given to decedent, Sparks, being as follows:

"Amount, $5,000.

"Fee, $25.                                        Warrensburg, Mo., May 1, 1892.

"Received of Saml. P. Sparks five dollars to be forwarded to the National Masonic Accident Association, of Des Moines, Iowa, for a certificate of mem-

bership, and insurance until October 1st, 1892.　If risk is declined, money will be refunded.

　　"[Signed]　　　　　　　　　　　　　　　R. L. Clarke, Genl. Agent."

The application was then sent (or brought) by the agent to the defendant at Des Moines, where a certificate of membership was made out, signed by the proper officers of defendant, and mailed to the applicant, to the address in Missouri as given on the application. Thereafter quarterly notices were mailed from the home office in Des Moines to the applicant (now member), in Missouri, of the dues then falling due, and of any special assessments made on the members. The applicant (member) at times mailed, from his home in Missouri, directly to defendant, at Des Moines, the amount of which he had been notified. But the proof shows that the general practice was for the members to pay these dues or assessments to some person in their home town, who acted as collector for defendant, and who collected and remitted to defendant at Des Moines the amounts thus collected. The receipts given by the collector for such payments to him were upon blanks furnished by defendant for that purpose, and their general form was as follows (I copy one introduced in evidence):

　　　　　　　　　　　　　　　　　　　　"Warrensburg, Mo., July 1, 1893.

　　"Received of Bro. C. A. Shepard three dollars, to be forwarded to the National Masonic Accident Association, in payment of premium call for the quarter commencing July 1, 1893.

　　"[Signed]　　　　　　　　　　　　　　E. N. Johnson, Collector."

It is shown, by the proof herein, that in the months of April and May, 1892, 66 membership certificates were issued to residents of the state of Missouri, 28 in April, and 38 in May. Of these members, 10 resided at Warrensburg, 9 at Marshall, 7 at Slater, 7 at Lexington; and the record of these certificates, as kept by the secretary of defendant, shows quarterly payments thereon during 1892, 1893, 1894, and into 1895.

Article 5, c. 89, Rev. St. Mo. 1889, contains the following:

　　"Sec. 5912. Process against Foreign Companies, Appointment of Superintendent to Receive or Accept Service of.　Any insurance company not incorporated by or organized under the laws of this state, desiring to transact any business by any agent or agents in this state, shall first file with the superintendent of the insurance department a written instrument or power of attorney, duly signed and sealed, appointing and authorizing said superintendent to acknowledge or receive service of process issued from any court of record, justice of the peace, or other inferior court, and upon whom such process may be served for, and in behalf of, such company, in all proceedings that may be instituted against such company, in any court, of this state or in any court of the United States in this state, and consenting that service of process upon said superintendent shall be taken and held to be as valid as if served upon the company, according to the laws of this or any other state.　Service of process as aforesaid, issued by any such court, as aforesaid, upon the superintendent, shall be valid and binding, and be deemed personal service upon such company, so long as it shall have any policies or liabilities outstanding in this state, although such company may have withdrawn, been excluded from, or ceased to do business in this state; and in case such process is issued by a justice of the peace or other inferior court, the same may be directed to and served by any officer authorized to serve process in the city or county where said superintendent shall have his office, at least fifteen days before the return day thereof, and such service shall confer jurisdiction.　Every such instru-

ment of appointment execut.d by such company shall be attested by the seal of such company, and shall recite the whole of this section, and shall be accompanied by a copy of the resolution of the board of directors or trustees of such company similarly attested, showing that the president and secretary or other chief officers of such company, are authorized to execute such instrument, in behalf of the company; and if such company shall fail, neglect or refuse to appoint. and maintain, within the state, an attorney and agent in the manner herein before described, it shall forfeit the right to do or continue business in this state."

Under the proven facts, is defendant brought, within the terms of said section 5912,—"any insurance company not incorporated by or organized under the laws of this state [Missouri], desiring to transact any business by any agent or agents in this state"? To my mind, but one answer can be given to this question. I am not now considering whether such business was legally or rightfully transacted, according to such section. Nor are the terms of the membership certificate now under construction. Nor am I concerned with the question whether this membership contract is to be construed according to the laws of Missouri or Iowa. The matter under consideration in this action, wherein a judgment obtained upon one of these membership certificates is sought to be enforced against defendant, is whether defendant was, at the date of service of process in the action where such judgment was rendered,—whether defendant was "transacting business" in Missouri, "by any agent or agents," within the meaning of the section above quoted. If the facts proven do not constitute the "transacting of business" in such state, then it is possible for defendant to solicit insurance in Missouri, Nebraska, Illinois,—indeed, in every state and territory in the United States, other than Iowa; to have its soliciting agents forward to the home office the applications taken; then to mail its membership certificates to the applicants, and collect by mail and by local collectors the quarterly and other dues; and yet to be "transacting business" in no state except Iowa, even though practically all its business transactions, in carrying on its, insurance business, may be with, and its insurance effected on, persons living in other states than Iowa. I cannot bring my mind to assent to this view. While it was carrying on this business—"transacting business"—in Missouri, in the matter of the insurance shown to have been therein obtained by its general and other agents, it was defendant's duty to have complied with the laws of the state, and to have had in said state its duly-appointed representative for the service of process upon it. And, as to insurance then and thereby effected, this duty remained with defendant as long as it continued to carry the insurance thus obtained, whether it had agents therein soliciting new insurance or not.

If it be claimed that, in the case I have above supposed, the action and location of the soliciting agents of such company would be presumed—if not, by the facts, indeed, proven—to be with the knowledge, and thereby with the assent and direction, of the officers controlling the company, so that the company might then properly be charged with having "transacted business" within such other states, we may inquire how the facts are in the case at bar as to the knowl-

edge of the controlling officers of defendant, and thereby of defendant. The proof is convincing that the officers of defendant could not have been ignorant that its general agent, R. L. Clarke, was soliciting, within the state of Missouri, insurance for defendant. The records produced in court, as kept by the secretary of defendant, show (taking the insurance at Warrensburg, Mo., as an illustration) that this general agent solicited and procured, in the early part of May, 1892, 10 applications at Warrensburg, on which defendant issued membership certificates. The applications sent to defendant named that city as the residence of these applicants. The record of policies issued states their residences as at "Warrensburg, Mo.," and the residence of the beneficiaries as in that city. Defendant's local collector at Warrensburg collected and remitted to defendant dues from these members (or some of them), at Warrensburg, during 1892, 1893, 1894, and into 1895. The policy record of defendant also shows the residence of various other members (of all the other 56 above referred to) as in Missouri. Under the articles of association and by-laws of defendant, introduced in evidence by defendant, defendant's business was under the control of a board of directors, and the secretary and general agent were chosen from the membership of that board. The secretary, as part of his duties, is required (by-law 16) to "keep a complete register of the name, age, residence, and resulting beneficiary of each member of the association, with the date of admission, and the name of the agent, if any, transmitting the application." He is also required to (same by-law) "perform all duties incident to the notification of members of, and the collection of, required payments, and the receipting to the members therefor," etc. Under by-law 19, the general agent is given "power to appoint and remove local and soliciting agents, subject to such restrictions as the executive committee may impose." This executive committee is chosen from the membership of the board of directors. Such by-law further provides that the general agent "shall have the general supervision of such [soliciting] agents, and it shall be his duty to exercise a watchful care over such agents, and so control and direct their efforts as to be most beneficial to the association."

No proof was offered that the executive committee had at any time imposed any restrictions upon the general agent as to the localities where he or the soliciting agents, over whom the by-laws give him control, should solicit insurance. It is true that Mr. Clarke, in his testimony, says he was but "nominally" the general agent of defendant when soliciting insurance for defendant in Missouri. But he signed as general agent the receipts he gave to the applicants from whom he received applications; and the pamphlet of articles of association and by-laws, introduced in evidence by defendant, contains his name as general agent, in the list it gives of the officers of defendant. Evidence was introduced tending to show that neither the board of directors nor the executive committee of defendant ever authorized or directed the soliciting of insurance in the state of Missouri. But that avails nothing as against a certificate holder or beneficiary therein named, when the application was taken in

Missouri by the general agent of defendant, who was a member of the board of directors, and who by the by-laws was invested with the power and charged with the duty of "exercising a watchful care" over agents soliciting insurance for defendant, and of "controlling and directing their movements," subject only to "such restrictions as the executive committee may impose," and no restrictions were imposed. This knowledge to defendant that its agents were actually soliciting· and taking applications for insurance with it from residents of Missouri, and within that state, is made yet more certain from the fact that to the secretary, a member of the board of directors, came the applications so taken, which disclosed (and were required so to do) the residences in Missouri of the applicants, and said secretary was required to send notices to these members at their residence. He must have known, as shown by his records, that the general agent himself was in Missouri, at least during the months of April and May, 1892, soliciting insurance from residents of that state. Further, the local collectors of defendant in the several Missouri towns collected and forwarded to the secretary, from quarter to quarter, the dues paid in on insurance held by residents of that state, and to him the secretary furnished receipts, to be delivered to those so paying.

It is beyond belief that, with the policy record, as shown in evidence, with the general agent in person soliciting insurance for so extended a period in Missouri, with the applications making known the residences of the applicants, and the correspondence of the defendant advising all who looked at it of the fact that defendant was thus accepting applications from residents of Missouri taken in that state, issuing certificates of insurance to them there, and carrying on the insurance business with said members in the manners. described,—it is beyond belief that the board of directors of defendant, of whose membership the secretary, general agent, and executive membership were a part, could have been ignorant of these facts. From the foregoing it necessarily follows that, at the date of the issuance to decedent, Sparks, of his certificate of membership in the defendant association, and at the date of the service of process upon the superintendent of the insurance department of the state of Missouri in the action wherein the judgment herein sued on was rendered, the defendant was transacting business in the state of Missouri, within the meaning of the section of the Missouri statutes above quoted. The law applicable hereto is plainly pointed out in the decisions rendered by the senior circuit judge of this circuit. Berry v. Knight Templars, etc., Co., 46 Fed. 439, while not "on all fours" with case at bar, has many points in common. In considering therein as to how the defendant company was affected by the laws of Missouri, with regard to the very statute now under consideration, ·Circuit Judge Caldwell forcibly remarks (page 441):

"Corporations are artificial creations, and have no natural rights, and their constitutional.and legal rights, in some respects, fall short of those of natural persons. A state cannot deny to the citizens of other states the right to do business within its limits; but it may deny such right absolutely to corporations of other states, or may admit them to do business on such terms and con-

ditions as it may please to prescribe. And when an insurance company of one state does business in another, the laws of the latter state prescribing the terms and conditions upon which it is allowed to do business in the state are obligatory upon it. These conditions may extend to the form and legal effect of the company's policies, and if, in the course of its business in a state, it issues policies on the lives or on the property of the citizens of the state which contain conditions prohibited by or in contravention of the laws of the state, such conditions are void. Doing business in the state, brings the policy within the operation of its laws, notwithstanding the policy may be signed, and the loss made payable, in another state. In such cases the company cannot, by any contrivance or device whatever, evade the effect and operation of the laws of the state where it is doing business. Wall v. Society, 32 Fed. 273."

The next contention of the defendant is that, although it was doing business in the state at the time the policy was issued, it had not then done those things which, by the laws of the state, were conditions precedent to its right to do business in the state, and that therefore, in the language of its counsel, "the defendant did not in any way submit to the jurisdiction of the state," and is in no manner bound by its laws. The state laws referred to were enacted for the benefit of the state and the protection of the policy holders. By failing to comply with them, the defendant and its agents incurred the prescribed penalties; but such failure does not affect the validity of its policies, or in any manner operate to the prejudice of its policy holders. By the fact of doing business in the state, it asserted a compliance with the laws of the state, and, after enjoying all the benefits of that business, and receiving the money of the assured, it will not be heard to say that it never submitted "to the jurisdiction of the state." It can reap no advantage from its own wrong. To sustain this defense would be giving judicial sanction to business methods much below the standard of common honesty.

In Ehrman v. Teutonia Ins. Co., 1 McCrary, 123, 1 Fed. 471, the statutes of Arkansas were considered in their relation to that case. The statutes then under consideration differ somewhat from the Missouri statute above quoted, but the general line of reasoning as hereinafter given is applicable to both statutes. After declaring, as in the Berry Case, that the failure of the insurance company to conform to the laws of the state with reference to appointment of agent on whom service of process should be made, would not affect the validity of the policy, nor operate to the prejudice of the policy holder, Judge Caldwell proceeds to consider how the failure of the company to file its stipulation under the statute, as to state authorities on whom service was to be made, affects the right of a policy holder to serve process on the state authorities designated by the statute. He says (page 128, 1 McCrary, and page 476, 1 Fed.):

"By the provisions of section 3561, Gantt, Dig. every insurance company of another state is required to stipulate, in terms, that service on the auditor shall be service on the company. If the stipulation is filed, service may be on the auditor or the person designated by him, or the agent designated by the company, at the election of the plaintiff. Cunningham v. Express Co., 67 N. C. 425. And if the auditor does not designate a party, and the company does not specify an agent, then the auditor alone is the proper person to serve with the process. And such service binds the company. The citizen insuring his property in this state is not required to search the files of the auditor's office for the purpose

of ascertaining whether the company has filed the required stipulation, and otherwise complied with the statute. The receipt of the premium, and the execution and delivery of the policy by the company, are equivalent to an assertion by the company that it has complied with the requirements of the statutes to entitle it to do business in this state; and, as between the assured and the company, the latter is estopped, upon the soundest principles of the law and morals, to say that it has not done so. That the stipulation was not in fact filed with the auditor is of no consequence, if the company has done those things which imposed upon it the obligation and duty to file it. The law deduces the agreement on the part of the company to answer in the courts of this state, on service made upon the auditor, from the fact of its doing business in the state; and the presumption, from that fact, of assent to service in the mode prescribed by the statute, is conclusive, and no averment or evidence to the contrary is admissible to defeat the jurisdiction. The reason of this rule is that the obligation to file the stipulation is imposed for the protection of the citizen dealing with the company, and when by its own act its obligation to file the stipulation is perfect, as between the company and the citizen, the company will not be permitted to relieve itself from a liability which the written stipulation would have imposed, by pleading its own fraud on the law of the state and her citizens. In such cases the law conclusively presumes that to have been done which law and duty, and the rights of the parties contracting with the company, required to be done. It is a familiar principle that jurisdiction cannot be acquired by fraud, nor can it be evaded by such a fraud as is here attempted to be set up. The maxim that no man shall take advantage of his own wrong is as applicable to corporations as to natural persons, and applies as well to the kind of agreement under consideration as to any other. Insurance companies incorporated by the laws of one state have no absolute right to do business in another state, without the consent, express or implied, of the latter state. This consent may be given on such terms as the state may think fit to impose, and these conditions are binding on the company, and effect will be given to them in the courts of all the states and the United States. Insurance Co. v. French, 18 How. 404; Paul v. Virginia, 8 Wall. 168. 'One of these conditions may be that it shall consent to be sued there. If it do business there, it will be presumed to have assented, and will be bound accordingly.' Railroad Co. v. Harris, 12 Wall. 65."

It necessarily follows, therefore, that service, as stated in the judgment record in evidence, upon the superintendent of the insurance department of Missouri, gave the court which rendered judgment jurisdiction therein over the defendant, and that the judgment is valid. I find that plaintiff is herein entitled to recover from the defendant herein the sum of $5,225, with interest thereon from November 25, A. D. 1893, at the rate of 6 per cent., and the costs of this action; and judgment is ordered accordingly, this judgment to draw interest at the rate of 6 per cent. per annum until paid. The clerk will compute the amount, and enter judgment accordingly, and notify counsel of record herein of the same. To all of which defendant duly excepts, and is given 60 days from entry of judgment within which to have signed and filed bill of exceptions.