HELEN PORTSCHELLER v. ATLAS MUTUAL BENEFIT ASSOCIATION, a corporation of the State of Delaware.

*(June* 19, 1944.)

RICHARDS, RODNEY and TERRY, J. J., sitting.

*Collins J. Seitz* for plaintiff.

*Clair J. Killoran* for defendant.

Superior Court for New Castle County, No. 55, March Term, 1942.

RODNEY, J., delivering the opinion of the Court:

The present matter comes to the Court in a rather unsatisfactory manner and the opinion of the Court is required upon somewhat insufficient facts. It is a difficult task to attempt to reconcile according to any fixed pattern or standard the diverse rulings on the question as to when a foreign corporation is "doing business" in a forum state so as to clothe the latter state with jurisdiction over it so as to warrant the service of process. As said in *Frink Co. v. Erikson,* (1 *Cir.*) 20 F. 2d 707, 711,

"We have tried, without success, to discover some salient circumstance or point common to all that might be held to be determinative of the instant case."

All of the cases indicate that a correct ruling can only be had upon the facts of the particular case. As is said

in *St. Louis S. W. R. Co. v. Alexander*, 227 *U. S.* 218, 227, 33 *S. Ct.* 245, 247, 57 *L. Ed.* 486, *Ann. Cas.* 1915B, 77:

"This court has decided each case of this character upon the facts brought before it, and has laid down no all-embracing rule by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to subject it to a given jurisdiction."

Attention must be drawn to the insufficiency of facts presented to us. Objection is made by the defendant to the jurisdiction acquired by the Michigan Court by reason of the service of process there. No record of the Michigan Court is before us, but by Item 6 of the agreed statement of facts it is stipulated that the Michigan judgment was valid if it be found that the defendant, upon the stipulated facts, was "doing business" in Michigan on September 10, 1934, when the policy in suit was issued.

The agreed statement of facts does state the activities of Koch, the admitted agent, who took the application upon which the instant policy or certificate was issued. There is nothing in the record nor statement of facts to indicate whether the activities of Koch, the admitted agent of the defendant in the State of Michigan, represented the only activities of the defendant in that State. Whether or not a foreign insurance corporation is "doing business" in a given state may depend not alone on the activities of the particular agent responsible for the issuance of the policy in suit, but upon the sum total of the activities of the company through all its various agencies, if more than one.

In 1839 Chief Justice Taney, in *Bank of Augusta v. Earle*, 13 *Pet.* 519, 588, 10 *L. Ed.* 274, brought to the fore the difficulties of a corporation exercising its franchises in jurisdictions other than that of its origin. Since then the activities of every state have been directed to some measure of control or regulation of "foreign" corporations, some of

which must inevitably do business in states other than that of their incorporation. These statutes both preceded and followed the "due process" clause of the 14th Amendment and, indeed, a few antedated the Augusta case.

Some jurisdiction by a state of a foreign corporation doing business in its boundaries has usually been sought because of one or more of three reasons: (1) A desire to have some general control or oversight of the qualifications of such foreign corporation doing business in the given state; (2) a desire to subject such foreign corporation to some measure of taxation for such doing of business, and (3) for the service of process on such foreign corporation, thereby obviating the requirement of suitors seeking relief in the home state of the corporation. Some care must be exercised in the distinction between the classes, for the requirements of each are not the same, and it has been said that the requirement for "service of process" is the least exacting of the three. With it only are we concerned. See 18 *Fletcher on Corporations, Permanent Ed.*, § 8712; 25 *Columbia L. Rev.*, "An analysis of doing business," 1018, 1045.

The concept of a foreign corporation "doing business" in a state as constituting jurisdiction by such state as to the service of process has been arrived at by the application of varying theories. Such jurisdiction was first thought to have at its source the implied consent of the foreign corporation to be bound by the laws of the state in which it was "doing business."

Such was the theory of *Old Wayne Mut. Life Ass'n v. McDonough*, 204 *U. S.* 8, 27 *S. Ct.* 236, 51 *L. Ed.* 345. When in *International Harvester Co. v. Commonwealth of Kentucky*, 234 *U. S.* 579, 34 *S. Ct.* 944, 58 *L. Ed.* 1479, it was held that a company solely engaged in interstate commerce was amenable to the laws of the state by reason of doing business in such state, the consent theory of jurisdiction largely gave way to the "corporate presence" theory. It is

thus now almost uniformly held that the presence of a corporation within a state necessary to the service of process is shown when it appears that the corporation by its conduct or the acts of its agents is there carrying on business in such sense or to such extent as to manifest its presence within the state.

These theories of jurisdiction, while valuable in their way, are of little aid in determining the difficult question of just what constitutes "doing business," so as to form the basis of a service of process. There has been a tendency to include as one of the factors to be considered the "reasonableness" of the exercise of jurisdiction under the facts of a case, as indicative of the extent and purpose of the corporate presence. This view was indicated in *Smolik v. Philadelphia & Reading Coal & Iron R. Co.* (D. C.) 222 *F.* 148; *Farmers' & Merchants' Bank v. Federal Reserve Bank,* (D. C.) 286 *F.* 566, at pages 577 and 588, and in Scott, "Jurisdiction over Non Residents doing business within a State," 32 *Harvard L. Rev.* 883. The suggestion is again made in *Frene v. Louisville Cement Co.,* 77 *U. S. App. D. C.* 129, 134 *F.* 2d 511, 519, 146 *A. L. R.* 926. See 23 *Va. Law Rev.* 307.

Much reliance is placed by the defendant on *Green v. Chicago, B. & Q. R. Co.,* 205 *U. S.* 530, 27 *S. Ct.* 595, 51 *L. Ed.* 916. There an Iowa corporation maintained an agency in Philadelphia which solicited freight and passenger business, and in some instances collected money and issued prepaid orders for transportation. The suit was brought to recover damages for a cause of action arising in Colorado. It was held that mere solicitation of business and nothing more did not constitute such a "doing of business" as to form the basis for a service of process. It will be noted that the Green case cited with no evidence of disapproval the case of *Denver, etc., R. Co. v. Roller,* (9 *Cir.*) 100 *F.* 738, 49 *L. R. A.* 77, 79, which on quite similar facts reached a different conclusion from that of the Green case. The Green

case only distinguished the cited case, stating that in it the action has been "brought in the state courts and the question was of the interpretation of a state statute and the jurisdiction of the state courts." [205 *U. S.* 530, 27 *S. Ct.* 596, 51 *L. Ed.* 916.] It will be also noted that is precisely the question in the present case, although it is difficult to see the exact basis of the distinction. See also *W. J. Armstrong Co. v. New York Cent., etc., R. Co.*, 129 *Minn.* 104, 151 *N. W.* 917, *L. R. A.* 1916E, 232, *Ann. Cas.* 1916E, 335.

In *International Harvester Co. v. Commonwealth of Kentucky*, 234 *U. S.* 579, 34 *S. Ct.* 944, 58 *L. Ed.* 1479, it was held that solicitation of business plus the receipt of certain money, checks or notes for goods sold in Kentucky did constitute such a "doing of business" in that state so as to sustain a service of process. The Court considered the Green case, which it termed "an extreme case."

The present standing and effect of the Green case has been the subject of some comment. Thus in speaking of it in *Frene v. Louisville Cement Co.*, 77 *U. S. App. D. C.* 129, 134 *F.* 2d 511, 518, 146 *A. L. R.* 926, it is said

"later cases, on the whole, have interpreted 'doing business' more broadly" and "it is impossible to tell how far the decision * * *. was due to reluctance to require the defendant and its witnesses to cross the continent and defend in the east a cause of action that arose in the west."

That this question of hardship as affecting railroads engaged in interstate commerce is an important one may be seen in *Davis v. Farmers' Co-op. Equity Co.*, 262 *U. S.* 312, 43 *S. Ct.* 556, 67 *L. Ed.* 996.

In *Hutchinson v. Chase & Gilbert*, (2 *Cir.*) 45 *F.* 2d 139, 141, Judge Learned Hand says

"possibly the maintenance of a regular agency for the solicitation of business will serve without more. The an-

swer made in *Green v. Chicago, Burlington & Quincy R. Co.* * * * perhaps becomes somewhat doubtful in the light of *International Harvester Co. v. [Commonwealth of] Kentucky* * * * and, if it still remains true, it readily yields to slight additions." See also *Wood v. Delaware & H. R. Corp.,* (2 *Cir.*) 63 *F.* 2d 235; *Pergl v. United States Axle Co.,* 320 *Ill. App.* 115, 50 *N. E.* 2d 115.

The U. S. Circuit Court for the First Circuit in *Canadian Pac. R. Co. v. Sullivan,* 126 *F.* 2d 433, 437, in distinguishing the Green case says "but this case, if it is still the law * * * is not in point." See also 21 *R. C. L.,* p. 1343.

In *Haskell v. Aluminum Co. of America,* (*D. C.*) 14 *F.* 2d 864, 869, the Court felt that the decisions of the Supreme Court "reveal a tendency to confine the principle of the Green case to the particular facts of that case."

Most of the cases involving "solicitations" as constituting a basis for service of process involve solicitations for orders for goods to be shipped from another state. Many of the general principles governing such solicitations are applicable to solicitations concerning insurance in a foreign insurance company. If there be a valid distinction between the two cases it may be partly based upon the distinctive nature of the insurance business and partly upon the fact that in case of orders of ordinary goods the shipment of the goods usually completes the transaction, while in case of life insurance the solicitations often result in a continuing contract involving monthly or quarterly payments, and usually is only terminated by death. Legal editors have seen sufficient distinction to list cases considering solicitations for orders of goods to be shipped into a state in an exhaustive note in 60 *A. L. R.* 994, and accord a separate treatment of foreign insurance companies as "doing business" in a state in *Merchants & B. Guaranty Co. v. Washington,* 185 *Okl.* 532, 94 *P.* 2d 930, 137 *A. L. R.* 1128. In the latter note it is said at 1134:

"It seems reasonably clear that the employment of soliciting agents in a state by a foreign insurer amounts to 'doing business' within such state."

Substantially the same statement is adopted as the text in 29 *Am. Jur.*, p. 78, as shown by the 1943 supplement.

At this point it seems material to direct attention to the facts of the present case. Koch was admittedly the agent of the defendant, specially named as such. Koch was the paid agent of the defendant. When he collected $6 from an insurance "prospect" he retained $4 as his commission, and sent $2 to the company, but the result was the same as if he had sent the entire $6 to the company and it had then paid to him the $4. As agent for the company he was paid by the company for the business he was doing for it. Koch collected from the insured the initiation fee due to the company and sent it forward; he collected the first month's dues for the company and sent it forward, also. The work that Koch did was at the company's request and in direct furtherance of the purpose of the defendant's corporate existence, and as a consequence of Koch's work, Portscheller became a certificate holder with the defendant, and so remained until he died, and as a like consequence of that work the defendant company received every subsequent month's dues from Portscheller.

Reserving, for the moment, the question of extent of business, it scarcely admits a doubt that Koch, the agent, was "doing business" of some kind in the matter of the Portscheller application, and since it is admitted that Koch was in that matter the agent, and the paid agent, of the defendant in the transaction, then it necessarily follows that then and there the defendant was "doing business" of some kind in Michigan, and business of the exact nature for which it was formed.

In *Pennsylvania Lumbermen's Mut. Fire Ins. Co. v. Meyer,* 197 *U. S.* 407, 415, 25 *S. Ct.* 483, 485, 49 *L. Ed.* 810,

the agents of a foreign insurance company came into a state to adjust the loss on a policy and were held "doing business" there. The Court aptly said:

"If not doing business in such case, what was it doing? It is doing the act provided for in its contract, at the very place where, in case a loss occurred, the company contemplated the act should be done; and it does it in furtherance of the contract, and in order to carry out its provisions, and it could not properly be carried out without this act being done; and the contract itself is the very kind of contract which constituted the legal business of the company, and for the purpose of doing which it was incorporated."

 In the present case no express place of payment of loss is mentioned in the policy. The policy is therefore payable in Michigan, the domicile alike of the beneficiary and of the deceased. *Bothwell v. Buckbee-Mears Co.*, 275 *U. S.* 274, 48 *S. Ct.* 124, 72 *L. Ed.* 277.

It was in Michigan, then, that the defendant through its agent solicited the insured to become a member. It was to that agent in Michigan that he paid his initiation fee and first dues. As a result of this solicitation the deceased in Michigan, during his life, sent his monthly payments direct to the defendant. It was presumably in Michigan that the insured died, and it was in that state that any investigation concerning the death would be made by the defendant, if it was not satisfied with the proofs of its liability, for there all the witnesses were to be found.

There are a number of cases involving service of process as a result of an insurance corporation "doing business" in a state, growing out of solicitations for insurance in a foreign insurance company, which seem of almost precise application. *Sparks v. National Masonic Acc. Ass'n*, (C. C.) 73 *F.* 277; *McNeely v. Fidelity Mutual Ben. Ass'n*, 178 *S. C.* 247, 182 *S. E.* 425; *State v. United States Mut. Acc. Ass'n*,

67 *Wis.* 624, 31 *N. W.* 229; *Merchants & B. Guaranty Co. v. Washington,* 185 *Okl.* 532, 94 *P.* 2d 930, 137 *A. L. R.* 1123; *Dixon v. Northwestern National Life Ins. Co.,* 189 *Iowa* 1268, 179 *N. W.* 885; *A. Harvey's Sons Mfg. Co. v. Sterling Materials Co.,* 247 *Mich.* 317, 225 *N. W.* 538. See also *Union Mut. Life Co. v. Bailey,* 99 *Colo.* 570, 64 *P.* 2d 1267, where solicitations over the radio were held a "doing of business."

The defendant relies heavily upon *Old Wayne Mutual Life Ass'n v. McDonough,* 204 *U. S.* 8, 27 *S. Ct.* 236, 51 *L. Ed.* 345. In that case the Court simply placed a strict construction upon a Pennsylvania statute and held that, under that statute, a foreign corporation had not consented to be bound concerning causes of action arising out of that state. 17 *Minn. L. Rev.* 289. The Court did not hold that a corporation could not by its conduct or doing business by its proper agencies so manifest its presence in a state as to justify the service of process on it there. But regardless of any distinction the cited case can have no bearing here by reason of the express stipulation filed in the cause. By stipulation No. 6, it is expressly agreed that the Michigan judgment was a valid and binding judgment if it be found, under the stipulated facts, that the defendant company was "doing business" in Michigan at or about the time of the issuance of the Benefit Certificate. That question is the only one presented for solution.

Still reserving for future discussion the consideration of the quantum of business done by the defendant in Michigan, we are of the opinion that such defendant was "doing business" there at the time stated. Every factor which may be necessary or material seems to be present: (1) Koch was the agent of the defendant; (2) Koch was paid by the defendant for the particular work upon which the suit was based; (3) Koch solicited and received the signed application of the insured; (4) the work was peculiarly in furtherance of the business of the company; (5) in addition to the

signed application Koch received the initiation fee due to the company and forwarded it to the company; (6) he received the advance dues to the company and paid them to it; (7) as a consequence of the work of the agent the insured received a contract from the company which remained in existence during his life; (8) as a result of the work of the agent the defendant company received dues on the certificate for a number of years. To all these factors, complete in themselves, may be added the strengthening thought of necessity and convenience. Regulations for service of process upon foreign corporations doing business in a state were primarily enacted for the citizens of the state where the business was done. This has special application to persons of most moderate means holding small policies of insurance in foreign insurance companies.

The facts of the present case emphasize this thought. When the application was signed and the certificate was issued the company was incorporated in Colorado as the Capitol Mutual Benefit Association of Denver. By succession, it is said that the defendant is now (or was at least when the present suit was brought) a Delaware Corporation. When it came to Delaware it came as Capitol Mutual Benefit Association of Delaware, and has since become Atlas Mutual Benefit Association, a corporation of the State of Delaware. If necessity, convenience or "reasonableness" be considered as of any moment there can be no comparison between requiring the beneficiary of the policy and her witnesses to follow the defendant to distant points of the country (or perhaps to several points) on the one hand and, on the other, compelling the defendant to answer in that state where the insured lived and died, and where his membership was first solicited, and where all witnesses are available.

We must now briefly consider the question of extent or quantum of business done. Many authorities sustain the contention of the defendant that single, isolated or spo-

radic transactions do not constitute a "doing of business" such as to subject a foreign corporation to service of process in another state. We are again met with the circumscribed nature of the facts as set out in the stipulation, and it is on these facts alone that we must rely. The stipulation states that Koch solicited and obtained the application and payment from Portscheller (the matter in suit) and solicited and obtained the application of one Nicholas Barodte, as to which the same procedure was followed. The stipulation then states:

"the foregoing were the only two applications forwarded to the company but the said Koch solicited numerous other individuals in the State of Michigan for the purpose of having them apply through him for membership in said Association for a continuous period of approximately thirty days and thereafter the said Fred Koch had no further association or solicited any membership for the Association. * * *"

The limitation of time of thirty days while a circumstance is not, of and in itself, conclusive of the matter. The true answer must, of necessity, depend upon other facts. Suppose a hundred new members had been obtained in the thirty days, it could hardly be contended that the business was isolated or sporadic. In *Sparks v. National Masonic Acc. Ass'n,* (C. C.) 73 F. 277, some 76 transactions were had in April and May. What portion was had in thirty days does not appear but the defendant herein, in discussing this case, concedes in his brief that such "was undoubtedly a continuous and active course of business."

We are thus remanded to the fact that the agent obtained two applications and "solicited numerous other individuals in the State of Michigan" for the purpose of having them apply for membership. Webster defines "numerous" as referring to persons as including a "great number." We thus have two signed applications, and an additional great number interviewed and solicited. Can the fact of "doing

business" be confined to those instances when the activities of the agent proved to be successful? We cannot so construe it. The greater part of the activities of the agent may have and probably did consist in interviews with what were considered potential members, and the attempt to convert these into active membership. Such is the universal experience. The doing of business consists not only in the successful efforts of an agent, but also in the germane and material efforts which failed of success. We have no means of ascertaining the ratio that successful interviews resulting in signed applications might bear to the total number of such interviews or solicitations, but we think that all are to be included in determining the question of business being done. The company wanted members and employed Koch to get applications. He was acting as agent in each solicitation, successful or unsuccessful. He was doing business in each solicitation. We are not concerned with the fact as to whether he was doing a successful business, but whether he was, in fact, doing business.

Under the stipulations we think that judgment should be entered for the plaintiff.

TERRY, J. (dissenting).

The question presented is narrow. Was the defendant's predecessor doing business in the State of Michigan on or about September 10, 1934 in such a manner as to subject itself to the legal process of the Michigan Court?

In *Bank of Augusta v. Earle*, 13 *Pet.* 519, 10 *L. Ed.* 274, it was laid down as then well established in legal principle that a corporation had no juristic existence outside of the State of its creation. This decision apparently closed the doors to any assumption of judicial control over foreign corporations, because there being no legal corporation in the forum any of its representatives leaving the State of organization were stripped of their official character. Subse-

quent to this decision, and due in the main to the development of corporate enterprise upon an enormous scale, such jurisdictional renunciation as adopted was found to be not only dangerous but unfair and unjust. It became, therefore, a practical necessity for the Courts to invoke fictional concepts in order to subject a foreign corporation to suit in another State. The manner in which the principle then existing was circumvented was by an artificial theory of implied consent to exterritorial service. This theory will be found in the case of *Lafayette Ins. Co. v. French,* 18 *How. U. S.* 404, 15 *L. Ed.* 451, wherein the Court held that jurisdiction could be obtained over a foreign corporation, provided the corporation had agents "doing business" or acting for it in the forum on the theory that the State having the right to exclude the corporation altogether could admit it on its implied assent or consent that it would be subject to suit therein. The reasoning in the Lafayette case was subsequently altered by the decision in the case of *St. Clair v. Cox,* 106 *U. S.* 350, 1 *S. Ct.* 354, 27 *L. Ed.* 222, wherein the Court made as a requisite for jurisdiction not an agent "doing business" for a foreign corporation, but that the corporation must be "doing business" in the forum. From this change in thought followed a great number of cases defining, but never with any degree of consistency, what constitutes the "doing of business." The test of jurisdiction over a foreign corporation as announced under the St. Clair decision was whether the corporation was "doing business" in the forum in such a manner as to justify the inference that it consented to the jurisdiction thereof.

Now the essence of the doctrine of "corporate consent" is the conception that the corporation is the creature of the State where organized, and, since it is not entitled to recognition elsewhere, as a matter of right, being permitted to do business only by reason of comity or by legislative courtesy, it must be presumed to assent to the jurisdiction of the forum in return for the permission of the forum. The doc-

trine became operative only in those cases where foreign corporations failed to comply with the service statute by designating an agent upon whom service of process could be made. It is in those cases that the corporation was presumed, or by reason of its conduct an implied intent was found evidencing its consent to be bound by the law of the forum.

It was not until 1914 that a new theory of jurisdiction was announced under the designation of "corporate presence." *International Harvester Co. v. Commonwealth of Kentucky,* 234 *U. S.* 579, 34 *S. Ct.* 944, 58 *L. Ed.* 1479. Under this doctrine fictional theories of consent were discarded, and, whenever a corporation is found carrying on the purposes for which it was organized as an artificial whole, it is deemed to be present and subject to the jurisdiction of the forum. This idea suggests that whenever a corporation is found "doing business" it may for legal purposes, be deemed present as an individual; however, when the question of presence is applied to each we find a difference. The individual by his mere presence, irrespective as to the degree of his business transactions, is subject to the jurisdiction, but for the corporation a much higher degree of presence is needed. The corporation must be "doing business" under such circumstances as to justify the inference that by reason of the representative capacity of its agents it is present. It naturally follows that a corporation is not present within the jurisdiction when its transactions do not quite approach the "doing of business" necessary to render it amenable to the service of process.

Since the International Harvester case, the doctrine of "corporate presence" has been universally followed—even as the basis for the assumption of jurisdiction over foreign corporations not engaged in interstate commerce. In the case sub judice jurisdiction has been stipulated, provided we conclude the defendant's predecessor's presence in Michi-

gan meets the requirements as announced under the doc-
trine of "corporate presence" as it relates to the question
of "doing business."

It has also been stipulated that there does not exist in
the State of Michigan a statute defining what constitutes
"doing business" in said State with respect to a foreign cor-
poration. Therefore, it is evident that the question present-
ed is one of federal law wherein the defendant invokes the
protection of the Federal Constitution, and the problem pre-
sented is the extent of that protection as defined and applied
by the Federal Court. Since the question is one of due pro-
cess, we naturally turn to the decisional law as announced
by the Supreme Court in search of a criterion to follow.
From my study of the decisions, I find that the Supreme
Court has said nothing more than each case must be deter-
mined upon its own facts, and that there exists no rule that
could be said to be all embracing in its application. The man-
ner and extent of "doing business" must be of such import
as to justify the inference of actual as apart from construc-
tive presence of the corporation, and to such an extent that
it may be properly said that the corporation, through the
representative capacity of its agent, is present in the State.

Although each case must be determined upon its own
facts, there are certain characteristics that we look for to
indicate the carrying on of a business.

(a) The establishment and maintenance of a perma-
nent office to which all persons having business with the cor-
poration may come.

(b) The employment of an agent located within the
State who is advertised as the general agent of the corpora-
tion for such business as it transacts in the State.

(c) The continuous making within the State of con-
tracts binding on the corporation.

Although the absence of one or all of the above does

not necessarily determine the question, yet, any act or acts on the part of the corporation relied upon not including one or more should be closely scrutinized with reference to the purpose and import of the due process clause of the Constitution. Corporations constitute the backbone of American enterprise. Their continued existence is essential; likewise, their legal rights cannot be abused.

A review of Koch's authority and acts becomes necessary. In substance they are as follows:

(a) Koch was the soliciting agent with no power to bind the corporation.

(b) He merely obtained from the applicant an application, together with the amount of money as set forth in the statement of facts, and kept four dollars as his commission sending the balance to the corporation at its home office in Denver, Colorado for acceptance or rejection by the corporation.

(c) Upon the mailing of the application, together with the money aforesaid, the authority of the agent ended, at which time no contract had been entered into between the parties.

Appearing in the majority opinion are the following statements:

(a) "It was presumably in Michigan that the insured died."

(b) "It was in that state that any investigation concerning the death would be made by the defendant, if it was not satisfied with the proof of its liability, for there all the witnesses were to be found."

I find no justification for the above presumptions as indulged in by the majority. Certainly, these statements are completely outside the facts as stipulated, and, further, in

my opinion, do not even constitute proper inferences to be drawn therefrom. However, admitting arguendo that the statements fall within the category of proper inferences to be drawn from the facts, yet the facts do not reveal that an investigation was ever made in Michigan thus forming the basis of jurisdiction as in the case of *Commercial Mutual Accident Co. v. Davis,* 213 *U. S.* 245, 29 *S. Ct.* 445, 53 *L. Ed.* 782. The contract herein is a Colorado contract, and the record is devoid of any facts that would justify the inference that the corporation transacted any business of whatever nature in the State of Michigan other than that which was done by Koch, the agent.

Many cases have been cited by respective counsel, and many more will be found in the majority opinion. In the light of the general rule as herein stated space will not be taken to discuss them, for the reason that I have been unable to find any case with facts corresponding to the facts in this case as to make any former decision a controlling force. Some of the cases deal with soliciting alone, some deal with definite statutory provisions, while others deal with soliciting, plus the collection of premiums, adjustment of losses and other transactions in pursuance to the contract entered into between the parties, irrespective as to the nature of the contract.

The plaintiff relies strongly upon the case of *Sparks v. National Masonic Acc. Ass'n,* (*C. C.*) 73 *F.* 277, even to the extent of stating that this Court could well rest its conclusion thereon. A reading of the Sparks case clearly connotes that agents, in addition to soliciting applications, acted as collecting agents of the corporation subsequent to the execution of the contract, and did in fact collect monthly installments under said contract. The Sparks case in my opinion was properly decided and is clearly distinguishable from the case sub judice.

The argument is made throughout the decisional law

that, if the corporation through its agent adopts and pursues a plan for the furtherance of its business, then it becomes subject to the process of the local jurisdiction. This argument has never been accepted as a rule to be followed, for the reason that the element of degree is of necessity the yardstick of measure and must be applied to all the circumstances found in any given case.

In the case of *Green v. Chicago, Burlington & Quincy Ry. Co.*, 205 *U. S.* 530, 27 *S. Ct.* 595, 51 *L. Ed.* 916, the Supreme Court said that soliciting by an agent with no authority beyond solicitation does not amount to the "doing of business" which subjects a corporation to the local jurisdiction for the purpose of service of process upon it, so it is evident that there must be more than a plan for the furtherance of its business in the forum in order for it to be said that the corporation is "doing business" therein. Likewise, a continuous course of business in soliciting is not sufficient, as in the case of *Peoples Tobacco Co. v. American Tobacco Co.*, 246 *U. S.* 79, 87, 38 *S. Ct.* 233, 235, 62 *L. Ed.* 587, *Ann. Cas.* 1918C, 537, the argument was advanced that by reason of the continuous course of soliciting the defendant was doing business, and, in support of this contention, the International Harvester Co. case was cited. The Court in answering this argument stated, "but in that case (International Harvester Co.) the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the State of Kentucky in such a manner as to make the Harvester Company amenable to the process of the courts of that State." The Court did say, however, in the Tobacco case that the mere solicitation of orders of the retail trade to be turned over to jobbers without authority to make sales, to

collect money or extend credit, did not constitute the "doing of business" within the forum.

In the case of *Green v. Chicago, Burlington & Quincy Ry. Co.*, 205 *U. S.* 530, 531, 27 *S. Ct.* 595, 51 *L. Ed.* 916, the defendant operated a railroad line—the eastern point of which was at Chicago and from there its tracks extended westward. The business for which it was incorporated was the carriage of freight and passengers, and the construction, maintenance and operation of a railroad for that purpose. As incidental and collateral to that business, freight and passenger traffic was solicited in other parts of the country than those through which the defendant's tracks ran. The defendant employed an agent, hired an office for him in Philadelphia, designated him as district freight and passenger agent, and in many ways advertised to the public these facts. The business of the agent was to solicit and procure passengers and freight to be transported over the defendant's line. For conducting this business several clerks and various travelling, passenger and freight agents were employed who reported to the agent and acted under his direction. He sold no tickets and received no payments for the transportation of freight. *When a prospective passenger desired a ticket and applied to the agent for one, the agent took the applicant's money and procured from one of the railroads running west from Philadelphia a ticket for Chicago and a prepaid order which gave to the applicant upon his arrival at Chicago the right to receive from the defendant a ticket over its road. Occasionally he sold to railroad employees who already had tickets over the intermediate lines orders for reduced rates over the defendant's line.* In some cases, for convenience of shippers who had received bills of lading from the initial line for goods routed over the defendant's line, he gave in exchange therefor bills of lading over the the defendant's line. In these bills of lading it was recited that they should not be in force until the freight had actually been received by the defendant. The

plaintiff in the action was a citizen of Pennsylvania and brought his suit in the Circuit Court for the eastern district of Pennsylvania to recover damages for personal injuries alleged to have been incurred in Colorado through the negligence of the defendant. The Court stated in its opinion that the question presented was whether service upon the agent was sufficient, and one element of its sufficiency was whether the facts showed that the defendant corporation was "doing business" within the district. In answer to this question the Court held that it was obvious that the defendant was doing in Pennsylvania a considerable business of a certain kind, although there was no carriage of freight or passengers, but that the business shown was in substance nothing more than that of solicitation, and, without formulating any general rule defining what transactions will constitute "doing business" in the sense that liability is incurred, the Court stated that there was not enough to bring the defendant within the district so that process could be served upon it.

The majority opinion evidences disapproval of the Green decision. Quite a few courts have criticized it upon two grounds: First, they say it is impossible to determine how far the Green decision was due to the Court's reluctance to require the defendant and its witnesses to cross the continent and defend in the East a cause of action that arose in the West. Of course, this attack is based upon the theory of "corporate submission." This doctrine is predicated upon the thought that a foreign corporation by "doing business" within a State submits itself to the laws of that State which may reasonably be applied to it, and to the jurisdiction of the State so far as the laws of the State regulating the exercise of that jurisdiction are reasonable. When analyzed the doctrine means nothing more than when a corporation does business in a foreign State it submits to all the reasonable laws respecting jurisdiction—the consent doctrine being applied where consent is applicable, and the presence doctrine being applied in cases where consent is not applicable.

If this doctrine is to be followed, it seems to me that the corporation would, out of necessity, have to be found to be "doing business" in such a manner as to subject itself to the jurisdiction of the forum, and then it would follow that although jurisdiction has been acquired, yet, due to the extreme inconvenience to be suffered by the corporation in having to come to the forum to defend the action, jurisdiction will be withheld. The inconvenience to the plaintiff does not seem to me to be the criterion under this doctrine. Second, Courts having before them facts similar to the facts in the Green case and desiring to reach a different conclusion have said that the Green case is an extreme case, or that the Green case must stand alone as being determined upon the particular facts therein presented.

It is clear in the present case that the defendant's predecessor did not establish and maintain a permanent office in the State of Michigan to which all persons having business with the corporation could go and there transact their business. It did not employ an agent located within the State of Michigan who was advertised as the general agent of the corporation for such business as it transacted in that State. It did not make any contracts whatsoever in the State of Michigan. To be sure, it transacted business in Michigan, but such transactions did not approach the "doing of business" necessary to render it amenable to service of process therein. It was not carrying on the purposes for which it was organized as an artificial whole. The business done was not of such an import as to justify the assertion that its presence was actual as apart from constructive. Since the contract herein was not made in Michigan; and, since the corporation performed no acts in Michigan in pursuance thereof, it is difficult for me to understand the conclusion as reached by the majority that it was present. Without attempting to lay down any rule defining what constitutes "doing business" so as to determine a corporation's presence in the forum, I am of the opinion that the defendant's prede-

cessor was not present in the State of Michigan on or about September 10, 1934 in such a manner as to subject itself to the process of the Michigan Court, for the reason that the transactions herein amounted to nothing more in substance than mere solicitation.

Since concluding the defendant's predecessor was not present, necessity does not require a determination as to whether or not the business transacted by the agent on behalf of the corporation constituted mere isolated incidents as opposed to a continuity of operation.