## MERCHANTS & BANKERS GUARANTY CO. v. WASHINGTON.

No. 28804.    Oct. 17, 1939.

Thos. H. Wren, of Okemah, and Dean Boggs, of Jacksonville, Fla., for plaintiff in error.

J. Walter Long, Jr., of Okemah, for defendant in error.

OSBORN, J. This action was commenced in the district court of Okfuskee county by Larita Washington, hereinafter referred to as plaintiff, against the Merchants & Bankers Guaranty Company, hereinafter referred to as defendant, as an action upon a life insurance policy issued by defendant upon the life of G. D. Washington, deceased husband of plaintiff. Plaintiff was the beneficiary named in said policy. The cause was tried to a jury and a verdict was rendered in favor of plaintiff in the sum of $800. From a judgment thereon, defendant has appealed.

The principal contention of defendant is that the policy was procured by fraud in that the insured falsely represented that he was in good health at the time the policy was issued and also at a subsequent time when the policy was reinstated after it had lapsed on account of delay in payment of a premium.

The policy was issued on August 7, 1934, and the insured died on May 11, 1935.

It is contended, first, that the trial court erred in overruling a motion to quash the service of summons. It appears that the defendant company is a foreign corporation domiciled in the state of Florida; that its principal place of business is Jacksonville, Fla.; that no service agent within this state had been designated by defendant. Service was procured under the provisions of section 133, O. S. 1931, 18 Okla. St. Ann. § 455, by service of summons upon the Secretary of State. It is urged that the defendant is not "doing business in this state," and therefore said section has no application. Plaintiff relies upon the case of Naill v. Order of United Commercial Travelers of America, 103 Okla. 179, 229 P. 833. In that case it was held

that where an association, incorporated under the laws of another state, established subordinate branches or councils in this state, with authority to pass upon the physical, mental, and moral eligibility of applicants for membership and insurance, and that 50 per cent. of the initiation fee was retained by the subordinate council, said association is "doing business in this state" within the purview of section 5436, C. O. S. 1921 (133, O. S. 1931). That case was quoted with approval by the Supreme Court of North Carolina in the case of Lunceford v. Commercial Travelers Mutual Acc. Association of America, 190 N. C. 314, 129 S. E. 805, wherein it was held:

"A mutual benefit insurance company, claiming to have no agents or solicitors, but issuing policies to residents of state on on application dated at post office address of applicant and recommended by a resident already insured. who signs application, is thereby 'doing business in the state' within meaning of C. S. sec. 1137, providing for service of process on corporation doing business in state."

In the case of Kulberg v. Fraternal Union of America (Minn.) 154 N. W. 748, it was held:

"The assumption of liability, in the form of reinsuring existing insurance contracts and the collection of premiums due thereon from members residing in the state, and to thus keep and maintain the contracts in force, constituted the 'transaction of business' in this state."

We quote from the body of the opinion in the case of Commercial Mut. Accident Co. v. Davis, 213 U. S. 245, 29 S. Ct. 445, 53 L. Ed. 782, as follows:

"Was the defendant doing business in the state of Missouri? The record discloses, and the court has found, that it has other insurance policies outstanding in the state of Missouri. Upon these policies, undoubtedly premiums were paid, and it was the right of the company to investigate losses thereunder, to have an examination of the body of the deceased in proper cases, and to do whatever might be necessary to an adjustment or payment of any loss. The record shows that the company sent Dr. Mason to Fayette to investigate the loss sued for in this case, and later and at the the time of the service of the process, Mason was in Missouri with full authority to settle the loss in controversy.

"Previous cases in this court have not defined the extent of the business necessary to the presence of a foreign corporation in the state for the purpose of a valid service; it is sufficient if it is doing business therein. We are of opinion that the finding of the court in this case is supported by testimony, and that the corporation was doing business in Missouri."

In the case of Mutual Reserve Fund L. Ass'n v. Phelps, 190 U. S. 147, 23 S. Ct. 707, 47 L. Ed. 987, it was stated:

"* * * It was stipulated between the parties that the outstanding policies existing between the association and citizens of Kentucky were continued in force after the action of the Insurance Commissioner on October 10, 1899, and that on said policies the association had collected and was collecting dues, premiums, and assessments. It was, therefore, doing business within the state. Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 43 L. Ed. 569, 19 S. Ct. Rep. 308."

The record discloses that plaintiff herein was a regular soliciting agent of defendant company and was authorized to solicit insurance for and in behalf of said company. The record does not disclose whether or not defendant has other soliciting agents within this state, but no contention is made that we are here dealing with an isolated transaction. In the light of the authorities to which we have referred, it is clear that defendant was transacting business within this state, within the meaning of section 133, supra, and the effect of said provision is to authorize the service of summons upon the Secretary of State in this case.

The authority of the Legislature to enact such a provision, which has the effect of giving the state courts jurisdiction of the defendant, insofar as its business within this state is concerned, is not questioned. Such authority is fully discussed in the cases hereinabove cited.

Defendant relies upon a number of cases involving the solicitation of orders and sales of merchandise within this state by nonresident corporations. Obviously, these authorities are not in point here.

Defendant charges that the amount of recovery was excessive. In this connection it is pointed out that by the terms of the policy it is provided that in the event of a claim arising under the policy due to death or injury after six months from the effective date of the policy, or any reinstatement thereof, and within nine months, the company shall be liable for only 60 per cent. of the benefits, and in the event of a claim arising nine months from the effective date of the policy or any reinstatement thereof and within 12 months, the company shall be liable for only 80 per cent. of the benefits otherwise payable. The policy also provided that the date of issuance should be the

date the policy became effective. In the face of the policy it provided for the payment of a sum not to exceed $1,000. It was issued on August 7, 1934. The insured died on May 11, 1935. Defendant contends that the premium was not paid for the month of September, 1934, until the 20th day of that month and by the terms of the policy was accepted as a reinstatement fee. Therefore, the policy was reinstated on September 20, 1934, and the limit of liability was $600. The verdict of the jury was for $800, which, under the instructions of the court, necessitated a finding that the policy was not reinstated and that the effective date thereof was the date of its issuance, to wit, August 7, 1934. As to the question of reinstatement, the evidence is conflicting. The plaintiff testified that the policy was not reinstated, while defendant's evidence was to the contrary. Defendant did not demur to plaintiff's evidence nor move for a directed verdict at the close of the case, and is now precluded from basing a contention upon the insufficiency of the evidence. See Holmes v. Chadwell, 169 Okla. 191, 36 P.2d 499; Marland Refining Co. v. Harrell, 167 Okla. 548, 31 P.2d 121.

It is further contended that the verdict is excessive in that it was shown that plaintiff, subsequent to the death of the insured, had borrowed the sum of $103 from the Citizens State Bank of Okemah and assigned the policy as security for the loan.. The assignment is as follows:

"I, Larita Washington, named as beneficiary in the within insurance policy, do hereby assign such policy to the Citizens State Bank of Okemah, Oklahoma, as security for the sum of $103.00, payable August 26th, 1935. And have this day written a letter, a copy of which is hereto attached, advising the insurance company of such assignment.

"Larita Washington.

"Witness:

"Jas. M. Shackelford."

Plaintiff argues that the assignment is invalid by virtue of certain provisions of the policy relating to the assignment thereof, but it appears that such provisions relate only to assignments by the insured and have no application to an assignment of a portion of the proceeds of the policy by the beneficiary thereof after the death of the insured. The bank was not made a party to this action. It would have been the better practice to have made said bank a party, but we are here called upon to determine whether or not the full recovery may be

sustained in view of the failure to make said bank a party to the action. There is no dispute between the plaintiff and the bank. Plaintiff admits the indebtedness and concedes that said indebtedness is properly payable out of the proceeds of the policy.

In the case of Liverpool & London & Globe Ins. Co. v. Cargill, 44 Okla. 735, 145 P. 1134, the court was called upon to determine whether or not a bank was a necessary party in an action on a fire insurance policy brought by the insured to which policy there was attached the usual "Loss Payable Form" in favor of said bank. It was held that where the amount of the mortgage which was due from the insured to the bank was less than the amount due under the policy the insured might maintain an action in her own name on the policy and the court should, by proper order, protect the rights of the mortgagee. That case was followed by the case of Connecticut Fire Ins. Co. of Hartford, Conn., v. Farmer's Union Co-operative Gin of Ladessa, 177 Okla. 407, 60 P.2d 724, wherein it was pointed out that the persons named in a "Loss Payable Clause" are proper but not indispensable parties. In Cooley's Briefs on Insurance (2nd Ed.) vol. 7, p. 6301, the author, after discussing other authorities to the same effect, concludes:

"The insured may, under such a policy, maintain an action in his own name, the court protecting the rights of the person to whom the loss is payable, and the insured holding as trustee the amount due such payee."

These authorities are applicable by analogy to the facts involved herein. Insofar as defendant is concerned, the only question necessary for determination is whether or not there is liability on the policy involved herein; however, the defendant is entitled to protection as against the assignment executed by plaintiff. We are therefore of the opinion that the judgment should be undisturbed except as to the sum of $103, together with accrued interest thereon, for which amount judgment should be rendered in favor of plaintiff as trustee, for the use and benefit of the bank.

It is urged that the trial court erred in the refusal of a number of requested instructions. One of these relates to a purported settlement of this controversy. In this connection it appears that defendant made an offer to settle plaintiff's claim for the sum of $103, and prepared a draft for that amount payable to the Citizens State Bank of Okemah and James Shackelford, who was plaintiff's attorney at that time,

and mailed the same to said attorney. It appears that the draft was dated September 18, 1935, and on October 29, 1935, plaintiff's attorney notified the defendant that plaintiff would not accept the sum of $103 in settlement of her claim. No demand was made by defendant for a return of the draft. Plaintiff's attorney, Shackelford, died. After the close of the trial in this case defendant presented evidence upon a hearing of its motion for new trial, to the effect that the draft was in the possession of the Citizens State Bank of Okemah. It had never been endorsed nor cashed. Defendant contends that under this state of facts it was entitled to an instruction that retention of the draft constituted an accord and satisfaction. There is no merit in this contention. Defendant was notified that the draft would not be accepted and no prejudice whatever was shown by the failure of plaintiff or her agents to return the same to defendant.

Various other requested instructions related to the contention that the insured stated in his application that he was in good health when he was, in fact, suffering from a diseased or ulcerated leg. An examination of the record discloses that no witness testified that said insured was suffering from such an ailment at the time of making application for insurance. In the case of Miller v. Price, 168 Okla. 452, 33 P.2d 624, it was pointed out that instructions should not run to questions not presented or covered by the evidence.

Defendant further complains of the refusal of the trial court to give an instruction relating to alleged false statements made by the insured upon the purported reinstatement of the policy, but, as we have hereinabove pointed out, the jury found there was no reinstatement of the policy; therefore, defendant did not sustain any detriment in the refusal of the court to give such instruction.

A number of assignments of error related to the sufficiency of the pleadings and various orders of the court entered upon demurrers and motions to strike certain portions of the pleadings. We have examined these assignments of error and fail to find any reversible error committed by the court in these various particulars. The pleadings sufficiently raise the question of defendant's liability on the policy and present the various defenses urged by defendant against said liability. The cause was fairly tried, the jury was properly instructed, and the record is free from reversible error.

The judgment is affirmed, with directions to the trial court to modify the judgment by decreeing that plaintiff hold the sum of $103, together with accrued interest thereon, in trust for the use and benefit of the Citizens State Bank, unless a proper release or waiver of said assignment is filed.

BAYLESS, C. J., WELCH, V. C. J., and RILEY, CORN, GIBSON, HURST, and DAVISON, JJ., concur. DANNER, J., absent.