Victoria WARREN, Administratrix of the Estate of R. B. Warren, Deceased, Plaintiff in Error,

v.

C. A. STEELE and George S. Downey, a co-partnership, d/b/a Steele & Downey, Defendants in Error.

No. 38270.

Supreme Court of Oklahoma.

June 30, 1959.

Rehearing Denied Sept. 29, 1959.

Green & Feldman, W. E. Green, Raymond G. Feldman, Wm. S. Hall, George A. Farrar, Tulsa, for plaintiff in error.

C. A. Steele, George S. Downey, Tulsa, for defendants in error.

IRWIN, Justice.

This is an action by C. A. Steele and George S. Downey, a co-partnership d/b/a Steele and Downey, against Victoria Warren, Administratrix of the Estate of R. B. Warren, Sr., deceased, for recovery of fees for legal services rendered to R. B. Warren, Sr., during his lifetime and costs and fees expended. The jury returned a verdict in favor of the plaintiff and from judgment entered thereon, the defendant perfected this appeal. The parties will be referred to as they appeared in the trial court.

R. B. Warren, Sr., and Victoria Warren were married in 1925 or 1926, at which time each owned a separate business. After the marriage each sold his or her business and engaged in the business of acquisition of real estate which was jointly managed by them. Title to property acquired by them was taken sometimes in individual names and sometimes in their joint names. The estate was appraised at approximately one-half million dollars. A claim against the estate was duly filed by plaintiffs, and the same was disallowed by the Administratrix.

The testimony of R. B. Warren, Jr., discloses that in March and April of 1956, Victoria Warren, wife of R. B. Warren, Sr., later appointed Administratrix of his estate, contacted her step-son, R. B. Warren, Jr., and asked him to talk to his father about his estate planning; that his father was getting along in years and he should do something about it. R. B. Warren, Jr., agreed to talk to his father, only if his father agreed. Subsequently, she telephoned him that his father was ready to talk to him. About April 10, 1956, he picked up his father at the home and took him for a drive. That after his father got in the car he directed his son to drive by certain properties and as each piece of property was passed, R. B. Warren, Sr., stated to whom he wanted the property to go. After viewing the different properties, they drove to the farm of R. B. Warren, Jr.; that on the way R. B. Warren, Sr., told him he wanted his wife, Victoria, to have the property at Third and Cincinnati, as it is compact, rents well, and she would not have to work with or worry about it like the other pieces of property. That he also discussed his bank accounts and savings and loan accounts and told him what disposition he wanted made of them. After the ride, they returned to the home of R. B. Warren, Sr., where Mrs. Warren was informed that R. B. Warren, Sr., had expressed a desire to make a division of the property. After discussion, R. B. Warren, Sr., instructed his son to contact George Downey, one of the plaintiffs herein, and John McNamee, a tax man, to handle the estate planning. That he did contact both men and the three of them went to the home of R. B. Warren, Sr.; that Victoria Warren was present and heard everything that was said. That R. B. Warren, Sr., told Downey and McNamee what he had told him on Saturday, how he wanted the property divided, and for them to handle the details. That Mr. Downey arranged to get abstracts, deeds, bank statements and books covering the savings and

loan accounts. Thereafter, he and Downey went back to the home of R. B. Warren, Sr.; that Mr. Downey had deeds, new passbooks, and signature cards of bank and savings and loan accounts. That R. B. Warren, Sr. and Victoria Warren signed all deeds and signature cards at that time and returned them to Mr. Downey so he could file the deeds and present the new signature cards.

In addition to the testimony above set out, it was stipulated that plaintiffs performed the following legal services:

1. Examination of title to all real estate involved;

2. Examination of contracts and titles to property covered by contract;

3. Examination and transfer of seven savings and loan accounts;

4. Examination and transfer of bank checking and savings accounts;

5. Assembling of information relative to assessment of, and income from all real estate involved;

6. Presentation and obtaining permission for approval of a lot-split through the Metropolitan Planning Commission;

7. Investigation into the State and Federal Tax Laws relative to gift and estate taxes;

8. Various conferences with tax counsel, and the parties involved;

9. Necessary time spent on above work between April 24, 1956, and June 23, 1956.

Testimony was offered by three witnesses that the services as outlined above were of the value of $1,250, and this was not denied by the administratrix.

The defendant argues three propositions. 1. Error of the Court in admitting testimony of R. B. Warren, Jr., concerning ownership of property involved and refusing like testimony by defendant. 2. Permitting testimony which tended to impeach defendant and refusing testimony which tended to impeach the testimony of R. B. Warren, Jr., 3. The giving of instruction No. 4, and refusal to give defendant's requested instructions numbered 2 through 6.

The Court submitted the matter to the jury under instructions to determine if a contract of employment, either express or implied were entered into between R. B. Warren, Sr., during his lifetime and the plaintiffs for the performance of certain legal services; and, if such contract were entered into, were the services performed as prescribed by R. B. Warren, Sr., and if so, the value of the services so rendered.

In establishing that a contract of employment was entered into, the Court permitted R. B. Warren, Jr., to testify as to certain conversations he had with his father concerning the property he owned, and his desire relating to the disposition thereof, and that R. B. Warren, Sr., instructed R. B. Warren, Jr., to contact Steele & Downey, attorneys-at-law, to do the work. That at the meeting between R. B. Warren Sr., George S. Downey and John McNamee, R. B. Warren, Sr., instructed them to divide the property on a fifty-fifty basis between R. B. Warren, Jr., and Victoria Warren.

During the testimony of Victoria Warren, an objection was sustained to the question of her attorney as to her or her husband's contribution of any capital in buying and selling real estate. Thereafter, and out of the hearing of the jury, the defendant offered to prove that she and her husband furnished a substantially equal amount of capital for the business; that she was the owner of a portion of the property R. B. Warren, Jr., stated his father said he owned, and that Mr. Warren did not own all of the property he recited he did own; that the property at 3rd and Cincinnati was at that time the property of Victoria Warren. The Court rejected the offer and we think rightly so. The question as to whether R. B. Warren, Sr., did or did not own any particular piece of property and whether he had a certain sum of money in the bank or in a savings and loan account and whether he had already deeded certain property to his wife, Victoria Warren, was not germane to the issue of whether R. B. Warren, Sr., had employed plain-

578

tiffs to perform certain legal services for him; and if they performed such services and are therefore entitled to pay therefor. We think the Court correctly stated it when he said "Whether or not the conveyances will stand, whether or not they will be set aside, whether or not there was any other implication with reference to these deeds, and what will happen to this estate after this matter is not subject matter for this Court." In the Case of Keahey v. Craig, 186 Okl. 162, 96 P.2d 521, 522, we said:

"It is not error to exclude evidence that has no bearing on, and does not tend to prove or disprove, any issue raised by the pleadings."

■ Again after sustaining an objection to the admissibility of certain other testimony of Victoria Warren the defendant offered to prove a statement purportedly made by R. B. Warren, Jr., to his father when the plaintiffs or either of them were not present. The offered testimony was to the effect R. B. Warren, Jr., said he would have his attorneys and his tax man do all the necessary work and he would pay all the fees. There was no testimony offered that Downey and McNamee were told that R. B. Warren, Jr., would pay for the services nor was there an offer of proof that any one else informed Downey and McNamee that R. B. Warren, Jr., would pay for the services. The Administratrix had the opportunity to advise Downey that she and R. B. Warren, Sr., would not pay for the services, but the record is silent as to any information given to Downey or McNamee that any one other than R. B. Warren, Sr., would be liable. The rejection of the offered testimony was not reversible error.

■ The defendant also complains that the testimony offered was for the further purposes of testing the credibility of R. B. Warren, Jr. An examination of the record does not disclose that the attorney for the Administratrix ever asked the witness R. B. Warren, Jr., whether he offered to bring out his lawyers and his tax man to work out the estate problems of R. B. Warren,

Sr., at R. B. Warren, Jr.'s expense. Since questions concerning the above were not asked R. B. Warren, Jr., the proper predicate for the admission of the testimony of the Administratrix was not laid and it was not error for the court to reject such testimony. In the case of Metropolitan Life Ins. Co. v. Plunkett, 129 Okl. 292, 264 P. 827, 830, we said:

"* * * No predicate was laid for the introduction of this as impeaching testimony, and it was therefore incompetent for that purpose. * * *"

■ Again the defendant objected to the testimony of Mrs. R. B. Warren, Jr., in rebuttal. The Administratrix had been asked on cross examination if she had ever called Mrs. R. B. Warren, Jr., in connection with the conferences at her home, or if she ever called Mrs. Warren, Jr., concerning any business matter connected with the property and to these questions the Administratrix answered in the negative. Mrs. Warren, Jr., in rebuttal testified Mrs. Warren, Sr., had called and talked to her about the conferences and had talked to her about setting aside a fund for the granddaughters of Mr. Warren, Sr. As a proper predicate was laid by asking the Administratrix the direct questions and her questions and her denial that she did talk about the conferences or other business affairs related to the estate, it was competent for the plaintiff to offer the testimony of Mrs. Warren, Jr., to test or affect the credibility of the Administratrix. Midwestern Engine & Equipment Co., Inc. v. Childers, Okl., 323 P.2d 738.

The defendant also complains of the giving of instruction No. 4 by the Court and refusing to give defendant's requested instructions 2 through 6. During the trial of the case, the Court permitted R. B. Warren, Jr., to testify as to a conversation he had with R. B. Warren, Sr., as to property owned by R. B. Warren, Sr., and how he wanted to dispose of the property. He further testified that he told Mr. Downey and Mr. McNamee the same thing and instructed them that he wanted his property divided

fifty-fifty between his wife and R. B. Warren, Jr., and for them to handle all the details. This evidence was admitted by the Court for the purpose of enabling the jury to determine if a contract of employment was entered into between the plaintiffs and R. B. Warren, Sr., and if it was, had the plaintiffs performed the services. We have heretofore held the admission of this evidence was not error and the court was justified in the giving of the instruction.

■ Requested instruction No. 3, was to the effect that plaintiff would not be entitled to recover if a contract did exist if the services rendered were to the disadvantage of the deceased or if such services were against his desires and instructions. Instruction No. 4 is to the effect that the relation between a lawyer and his client is highly confidential and when a lawyer undertakes to represent a client, he owes the client his full faith and fidelity, and if he fails to perform his trust and acts in any way adverse to his client and fails to carry out the instructions of his client, he thereby breaches the trust and the attorney cannot recover. Requested instruction No. 5, is to the effect, if a contract of employment were entered into and the plaintiffs failed to follow the instructions as given them by R. B. Warren, Sr., or if they performed the services in such a way that it did not carry out the intent and purpose of the deceased, plaintiffs could not recover.

■ While these issues were raised by the answer filed by the defendant, a review of the record does not disclose any evidence to justify the giving of the instructions. We have many times held that it is not error to refuse instructions on issues raised by the pleadings, when they are not supported by competent evidence. Sovereign Camp, W. O. W. v. Duke, 179 Okl. 299, 65 P.2d 484; Merchants & Bankers Guaranty Company v. Washington, 185 Okl. 532, 94 P.2d 930, 137 A.L.R. 1123.

■ With reference to instructions 2, and 6, requested by the defendant an examination of the instructions given by the court disclose that the same propositions contended for in the requested instructions were covered. The defendant contends that requested instructions should be given when their effect is to increase the clearness of the issue and cites Livingston Oil Corp. v. Shefts, 92 Okl. 292, 219 P. 101. While the Court's instructions were short and brief, they amply and fairly covered the issues and where the instructions taken together and considered as a whole, fairly represent the law applicable to the issues raised by the pleadings and which competent evidence is introduced, they are sufficient and refusal of the trial judge to give the requested instructions is not reversible error. Town of Braggs v. Slape, 207 Okl. 420, 250 P.2d 214.

There being no error shown by the record, the judgment of the trial court is affirmed.

DAVISON, C. J., and WELCH, HALLEY, JOHNSON, BLACKBIRD and JACKSON, JJ., concur.

WILLIAMS, V. C. J., and BERRY, J., dissent.

WILLIAMS, Vice Chief Justice (dissenting).

I respectfully dissent to the majority opinion for the reason that, in my view, it denies the defendant the opportunity of proving a valid defense.

This was an action to collect, in full, fees for professional services. In order to recover, plaintiffs, as in any other action on contract, had to prove the existence of the contract, its terms, and at least substantial performance of the contract. One of the defenses that may be available in such an action is that the work done fails to be even substantial performance of the terms of the contract sued upon.

The defendant in this case alleged in her pleading that plaintiffs' services rendered were not in accord with the terms of the contract, if such be established, and were

actually a disservice, to the detriment of deceased's estate.

The trial court and the majority opinion denies the defendant the right to prove a legal defense to this action on a contract.

That this denial of such a basic right adversely affects the defendant is shown by plaintiffs' evidence.

That evidence shows that plaintiffs, during all of the time of this transaction knew that R. B. Warren, (Sr.) and Victoria Warren, jointly contributed capital and efforts in their business. Such efforts resulted in the acquisition of all of the properties involved herein.

The evidence further shows that in 1950 R. B. Warren, (Sr.) and Victoria Warren entered into a written agreement for a division of these properties, which provided that the "Third and Cincinnati Streets" property was to be Victoria Warren's separate property. It is immaterial whether the deed to this property was ever legally delivered or not. Plaintiffs, presumably as part of their services charged for, prepared an agreement identical to the written agreement executed in 1950. These agreements recognized that this "Third and Cincinnati Street" property was the separate property of Victoria Warren, and therefore not a part of the estate of R. B. Warren (Sr.).

Plaintiff proved to the satisfaction of the trial court the existence of a contract. Such court also determined that the instructions of R. B. Warren (Sr.) to plaintiff were: "To divide my estate 50–50 between Robert B. Warren, Jr. and Victoria Warren."

What did the estate of R. B. Warren (Sr.) include? Surely there should not be included in that estate the separate property of Victoria Warren, even though bare legal title may have been in the deceased's name. If, as plaintiffs' own evidence (documents prepared by them and introduced in this case) shows, the "Third and Cincinnati Streets" property was Victoria Warren's by reason of her contribution of capital and work, the estate of her husband consisted only of the remaining seven or eight properties involved and the various monies on deposit.

Plaintiffs' own evidence (documents prepared by them) shows that upon Mr. Warren's death all of his estate went to Robert B. Warren, Jr.

Plaintiffs' evidence further shows that plaintiff regularly represented and was retained by Robert B. Warren, Jr., in his business. The instructions of Mr. Warren (Sr.), to plaintiffs were to "divide the estate 50–50". All of that estate, as a result of plaintiffs' services, went to Robert B. Warren, Jr. Which client were plaintiffs representing?

In an action on a contract, evidence conforming to the pleadings and the issues raised thereby, and only such evidence, is admissible on behalf of plaintiff or defendant. 17 C.J.S. Contracts § 567, page 1200.

In Miller v. Young, 197 Okl. 503, 172 P. 2d 994, we said:

> "It is a general rule of law that a contract must be performed according to the terms of the agreement before a party can have any right of action. Messick v. Johnson, 167 Okl. 463, 30 P. 2d 176."

As above indicated, I therefore respectfully dissent.

I am authorized to state that Justice BERRY concurs with the views herein expressed.