**HACO DRILLING CO., Inc.,**
**Plaintiff in Error,**

v.

**Oscar Ray BURCHETTE,**
**Defendant in Error.**

**No. 38996.**

Supreme Court of Oklahoma.

June 6, 1961.

Mart Brown, Rex H. Holden, Oklahoma City, for plaintiff in error.

Gomer Smith Jr., Oklahoma City, T. R. Benedum, Norman, for defendant in error.

DAVISON, Justice.

This action was brought by Oscar Ray Burchette (plaintiff) against Haco Drilling Co., Inc., and Sam J. Whitlock, Administrator of the Estate of Thomas W. Hughes, Deceased, for damages resulting from the collision of two automobiles. Plaintiff alleged that at all of the times mentioned in the petition Thomas W. Hughes (the deceased) was acting in the scope of his employment as the agent, servant and employee of the defendant, Haco, so as to render Haco responsible for the acts and consequences of the acts of the said Hughes. It was further alleged that on September 3, 1957, at about 6:20 a. m. plaintiff was driving his car west on State Highway No. 9 in Cleveland County, Oklahoma; that at a point about 4 miles east of Norman, Oklahoma, a car driven by the said Hughes in an easterly direction came across the center line into the plaintiff's lane of traffic; that the cars collided headon causing injury to plaintiff and his wife. Haco's verified answer denied Hughes was its agent, servant and employee at the time and place of the collision and alleged also that the accident was unavoidable.

In his first cause of action plaintiff sought recovery for his personal injuries, disability, loss of earnings and earning capacity, physical pain and mental suffering; for embarrassment and mortification due to his

crippling and deformity; and for medical expense. In his second cause of action plaintiff asked recovery for medical expense incurred by him in the treatment of his wife and for loss of her services in the home.

The cause was tried to a jury and resulted in a verdict totaling $23,500 against the defendants. From judgment on the verdict the defendant, Haco, has perfected this appeal. The defendant Whitlock, Administrator, has not appealed.

Haco's first allegation of error may be condensed to the proposition that the evidence was insufficient to show that the deceased, Hughes, was the agent, servant and employee of Haco, but was in fact an independent contractor; that the court erred in not sustaining Haco's motion for directed verdict.

The evidence relative to this proposition is that Haco was engaged in drilling an oil and gas well about 24 miles easterly from Norman, Oklahoma, and that the crew of the tour or shift from 7 a. m. to 3 p. m. consisted of a driller and three other employees of which the deceased, Hughes, was a member. Also that the driller had the authority and did hire the members of his crew and was empowered to give them instructions as to what he expected of them and what they were to do. There was no dispute that Haco furnished a water can and the ice to cool the drinking water that was brought to the oil rig. The water was available to and was consumed by the drill crew, the two owners of Haco (who acted as their own tool pushers) and all persons calling at the oil rig. There was no other drinking water available at the well location.

It was the practice for the three members of the crew, other than the driller, to take turns driving their cars and furnish transportation to the other two parties. The two surviving crew members testified that the driller instructed the crew that the person furnishing the car was to take the water can and get ice at an ice house, where Haco had made arrangements for ice, and bring the can with ice and water to the drill site every morning. The driller's testimony was to the same effect and further testified:

" * * * They were responsible for getting the water there and being on time at work time. And keeping up, if they didn't, we changed somebody."

On the morning of the accident the deceased, Hughes, was driving his car and after picking up the other two men drove to the ice house where it was filled with ice and water and placed in the car. Hughes then drove to Highway No. 9 and toward the well when the accident occurred at about 6:20 a. m. The place of the accident was on the direct route to the well. Haco did not furnish the car and had no interest in it and paid no mileage or expense of its operation. The wages of the crew began at 7 a. m. when they went on the rig and stopped at 3 p. m. at the end of the shift.

The plaintiff relies on the doctrine of respondeat superior to establish the liability of Haco. In Mid-Continent Pipeline Co. v. Crauthers, Okl., 267 P.2d 568, 571, we quoted from 57 C.J.S. Master and Servant § 570a, as follows:

" 'Under the doctrine of respondeat superior, a master is liable for injury to the person or property of another proximately resulting from the acts of his servant done within the scope of his employment in the master's service.' "

The necessity of having the water available was of sufficient importance that Haco furnished the container and ice. Under all of the evidence the securing of the ice water and its delivery to the well was the subject of explicit instructions as to time, place and method and as to the person charged with the performance of the duty. All employees of Haco on the shift drank the water. Under such circumstances the conclusion is that it was deemed and was in fact an incident of and in furtherance of the business of Haco in its drilling operations. In such factual situation Hughes was the servant or agent of Haco at the time of the accident.

We recognize as the general rule that a man's employment does not begin until he has reached the place of his employment, and does not continue after he has gone. Elias v. Midwest Marble & Tile Company, Okl., 302 P.2d 126. However, the instant situation presents an exception to the general rule. Not only was it anticipated that an employee's car would be used but under the facts a particular person (on the day in question this was Hughes) and his car was to carry the ice water. Hughes was going to work but this does not vary the fact that he was engaged in carrying out instructions given relative to performance of acts in his employment.

In Roring v. Hoggard, Okl., 326 P.2d 812, 813, there was presented a situation in which the employee was performing services for the master before the period of time for which compensation would be paid. In sustaining a judgment for personal injuries to a third person occasioned by the negligent act of the employee, we stated:

"Generally, a master or principal is liable for tortious acts of his servant or agent done in the course of his employment where such acts are incidental to and in furtherance of the business of the master. * * *

"It is not essential to liability by the master that the servant be entitled to compensation for the work at the time of the action causing the damage; it is enough to render the master liable if the person causing the injury was in fact rendering service for him by his consent, express or implied."

Haco cites Fairmont Creamery Co. of Lawton v. Carsten, 175 Okl. 592, 55 P.2d 757, in support of its contention that Hughes was at the time and place of the accident an independent contractor. The lack of similarity of the facts makes the case useful only in defining an independent contractor. In the present appeal Hughes was neither free of control and direction of Haco, nor could he perform the service according to his own manner and method.

The contention of Haco in this respect is without merit.

Haco also complains of refusal of the court to give its requested instructions as to elements to be considered by the jury in determining the existence of a master and servant relation between Haco and Hughes. Likewise, Haco urges the instructions given are lacking in this respect. As shown by the evidence and our conclusion above, the relationship existing at the time of the accident was that of master and servant or principal and agent. It is our opinion that the error, if any, was not such as to adversely affect the verdict of the jury for the reason that the instructions, when taken as a whole, sufficiently instructed the jury as to the issues presented by the evidence.

Haco further complains that instruction 12 does not define the master and servant relationship. The purpose of this instruction was to inform and advise the jury in its determination of whether Hughes at the time of the accident was engaged in the performance of an act which was within the scope or course of his employment. In Elias v. Midwest Marble & Tile Company, supra, we stated:

"In an action for the recovery of damages for personal injuries and vehicle damage sustained through the alleged negligence of an alleged employee, the burden is upon the plaintiff to show, not only that the alleged employee was an employee of the defendant, but that at the time the injury was sustained and the property damage suffered he was engaged in the performance of an act which was within the scope of his employment." [302 P.2d 127.]

The instruction was properly given for the purpose of satisfying the requirement above set forth.

See also Warren v. Steele, Okl., 344 P.2d 574, 576, in which we held:

"Where the instructions taken together and considered as a whole fairly present the law applicable to the issues raised by the pleadings and competent

evidence has been introduced, they are sufficient, and refusal of the trial court to give instructions requested by defendant is not reversible error."

 Finally Haco urges that the trial court erred in giving instruction 15. The complaint is that the instruction authorized recovery for "physical impairment, if any" and that this is a duplication of the other authorized elements of damage and allows a recovery of double damages.

In the recent decision of Shebester, Inc. v. Ford, Okl., 361 P.2d 200, this court had occasion to pass upon a similar instruction. After extensive citation of authorities our conclusion in that case was contra to Haco's contentions. Therein we stated:

"In personal-injury action the measure of damages under 23 O.S.1951, Sec. 61, is the amount which will compensate for all detriment proximately caused by the accident, including medical and hospital expense, pain and suffering, loss of time and earning capacity, permanent injuries or lasting disability in health, mind or person, although not contemplated or foreseen.

"In personal-injury actions impairment of earning capacity and permanent injuries or lasting disability in health, mind or person are separate elements of detriment, where proximately caused by the accident, for which compensation may be recovered."

We find no error in the giving of instruction 15.

Affirmed.

BLACKBIRD, V. C. J., and WELCH, HALLEY, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, C. J., dissents.

WILLIAMS, Justice (dissenting).

I respectfully dissent to the majority opinion for the reason that, in my estimation, it allows plaintiff to recover double or treble damages for the permanent injuries sustained by the deceased. To my way of thinking, loss of time and earning capacity, and lasting disability in health, mind or person, are the result of permanent injuries. See my dissenting opinion in Shebester, Inc. v. Ford, Okl., 361 P.2d 200, for full discussion.