MIDWEST CITY, a Municipal Corporation, Plaintiff in Error,

v.

Ted ECKROAT, Mrs. Ted Eckroat and Mary Eckroat, Defendants in Error.

No. 39883.

Supreme Court of Oklahoma.

Oct. 29, 1963.

Rehearing Denied Nov. 26, 1963.

Edward H. Ferrish, Midwest City, for plaintiff in error.

Rhodes, Crowe, Hieronymus, Holloway & Wilson, and Floyd L. Martin, Jr., Oklahoma City, for defendants in error.

BLACKBIRD, Chief Justice.

In this action defendants in error instituted in May, 1959, as plaintiffs, they sought recovery of damages against the plaintiff in error, as defendant, on account of injuries they allegedly sustained by reason of the defendant city's construction and maintenance of a sewage disposal and digester unit, or plant, across the road from plaintiffs' farm.

In their petition, plaintiffs alleged the erection and maintenance of the unit " * * in the Winter and Spring of 1957 * * *"; and, in their first alleged cause of action, sought the sum of $25,000.00 in damages for diminution of the usable rental value of their property as a Grade A dairy farm and as a residence, by reason of the filth and sewage placed adjacent to, and upon, it in the operation of the plant.

In their second alleged cause of action plaintiffs sought the sum of $16,400.00 in damages for diminution in the fair cash

market value of the property by reason of the sewage plant's proximity to it.

By a motion to make more definite and certain, defendant thereafter filed, in combination with a motion to elect and strike, and a demurrer, it, among other things, sought to require plaintiffs to allege the exact dates when their cause, or causes, of action arose. As far as the record affirmatively shows, however, this motion to make more definite and certain was never ruled upon, though it appears by a minute copied into the record from the trial court's docket, that the demurrer was overruled.

In a "FIRST AMENDED PETITION" plaintiffs thereafter filed, they again alleged the plant's erection and maintenance " * * in the Winter and Spring of 1957 * * * ", and also alleged rejection of the claim for damages they presented to the defendant's city council in April, 1959. In the first alleged cause of action of their amended petition, plaintiffs reduced the sum they were asking as damages for the diminished rental value of their property from $25,000.-00 to $3,600.00. In a part of said amended petition they designated as "THIRD CAUSE OF ACTION", they sought as damages to the value of their farm, the same $16,400.00 they had prayed for under their second cause of action of their original petition; and, in a new second cause of action, sought an additional sum of $21,-400.00 as damages on account of personal inconvenience, annoyance, discomfort, etc.

Defendant's answer to plaintiffs' allegations was a general denied.

When the cause came on for trial in May, 1961, plaintiffs' first witness, Ted Eckroat, during the early part of his testimony, told of various changes in living conditions on the involved farm brought about by the sewage disposal plant's operation beginning in 1957. Later this witness's testimony was interrupted by an objection interposed by counsel for defendant that such testimony should be confined to the period of time mentioned in plaintiffs' hereinbefore quoted pleadings, namely: the "Winter and Spring of 1957."

After talking to counsel for both parties out of the hearing of the jury, the trial judge ruled, upon consideration of plaintiffs' pleadings, that (as to temporary damages, at least) they might show the damages which occurred during a two-year period previous to the filing of their petition on May 29, 1959. After this ruling, to which defendant was allowed an exception, and then was recognized as interposing a continuous objection to all evidence of damages suffered by plaintiffs at any time other than during the year 1957, the witness, Eckroat, gave further and more detailed testimony as to temporary damages plaintiffs suffered during the period from the beginning of the plant's operation in 1957, until institution of this action in 1959.

After other witnesses for plaintiffs had given testimony on this, and other, subjects, their witness, Riley Black, a real estate man, testified as to the property's permanent damages. His testimony was not confined to the property's diminution in value as a grade A dairy farm, but he also testified as to its diminution in value for a low-cost housing development, for development as an industrial area, and for a gentleman farmer's headquarters.

After the defendant's witnesses had been heard, and before the cause was submitted to the jury, the court allowed plaintiffs, upon the parties' agreement that the exact amount of land was 76.66 acres, to change the amount they were suing for on their third cause of action to $22,998.00. By the verdict thereafter rendered, plaintiffs were awarded that amount on that cause of action, in addition to $3300.00 on their second cause of action, but were awarded nothing on their first cause of action. Judgment was thereafter rendered for plaintiffs, in accord with said verdict, for the total sum of $26,298.00.

After the overruling of its motion for a new trial, defendant perfected the present appeal.

 Under the first proposition defendant urges for reversal, it complains of

the trial court's admission, over its objection, of testimony on behalf of plaintiffs counsel concerning effects of the sewage plant's operation that apparently did not manifest themselves until 1958 and the early part of 1959. Defense counsel concedes that under the statutory two-year period of limitations with reference to the maintenance of nuisances (Tit. 12 O.S.1961 § 95) plaintiffs might have introduced evidence of injuries they suffered from the sewage plant's operation during the entire two-year period preceding the institution of the action; but they contend that, because 1957 is the only year mentioned in plaintiffs' pleadings, plaintiffs were restricted in their proof to that year. Plaintiffs' answer to defendant's argument is, in substance, that technical accuracy in pleadings is not required in this jurisdiction, and that defendant was not misled by plaintiffs' allegations, as was indicated by its not attempting to have the court require them to make their amended petition more definite and certain. They cite Liberty Plan Co. v. Francis T. Smith Lumber Co., Okl., 360 P.2d 500, for the proposition that no variance between the allegations in litigants' pleadings and proof is material, or fatal, unless it appears to have actually misled their adversary to its prejudice—the burden being upon the adversary to show this. We are of the opinion that the allegations of plaintiffs' first amended petition referring to the year 1957, are subject to more than one interpretation, and could reasonably be construed as representing no more than that defendant's sewage disposal plant was erected, *and commenced operation,* in the spring, and winter, of 1957, respectively. With said allegation thus construed, there was nothing in said petition to restrict plaintiffs to the year 1957, in establishing their damages. Furthermore, as noted from our description of the trial proceedings, defendant made no attempt, after filing its motion to make their *original* petition more definite and certain (which was never ruled upon and accordingly is not before us. Ward v. Coleman, 170 Okl. 201, 39 P.2d 113, 1st syll.) to cause

plaintiffs to be required to make the allegations of their *first amended* petition more specific. Under these circumstances, we think that it was within the trial court's proper judicial discretion to admit into evidence the testimony concerning the damages that accrued to plaintiffs during the year 1958, and the early part of 1959. We therefore hold that said court's overruling of defendant's objection to the introduction of such evidence was not error nor cause for reversal.

◼◼ Under its "PROPOSITION NO. 2" defendant complains of the trial court's having allowed plaintiffs' so-called "expert witness", Riley Black, over its objection, to testify as to the involved property's value for a prospective housing subdivision, industrial tract, or home of a gentleman farmer, whereas, according to plaintiffs' pleadings, their claim for damages was based solely on the diminution of the property's value, and highest and best use, as a grade A dairy farm. This witness did testify as to the land's per-acre value for the uses mentioned, both before and after the plant started operating; and his figures reflect a greater diminution in its value for those purposes (because of the plant's operation) than his testimony reflected considering the property's use as a dairy farm. But, despite defendant's charge that the objectionable testimony influenced the verdict to its prejudice, there is no evidence of this. The verdict definitely awarded plaintiffs no more, as permanent damages for the diminution of the property's value, than this witness testified was the difference in its value as a dairy farm, before and after the sewage disposal plant began operating, namely: $300.00 per acre. This court has long adhered to the rule that, before a judgment will be reversed on account of the erroneous admission of evidence, it must appear that said error was prejudicial. Aldridge v. Patterson, Okl., 276 P.2d 202. As the necessary prerequisite of prejudice does not appear here, we can only hold that, if the admission of Mr. Black's testimony concerning the land's value, for pur-

poses other than a dairy farm, was error, it was harmless, and not cause for reversal, under the circumstances.

Defendant's "PROPOSITION NO. 3" is:

"The court erred in giving Instruction No. 10 with reference to permanent damage to real estate."

Defendant's complaint (as more particularly described in the body of its argument) is that neither Instruction No. 10, nor any other of the court's instructions, submitted to the jury the question of whether the damage to plaintiffs' property was permanent or temporary; that said instruction allowed the assessment of double damages; and that it allowed the permanent damages to be determined during the two-year period prior to the filing of the action, as in the instance of temporary damages.

We find no merit in the first of these complaints. Assuming, without deciding, that Instruction No. 10 did not affirmatively call for a determination by the jury of whether the damages sought by plaintiffs in their third alleged cause of action were permanent or temporary, we are of the opinion that this is not cause for reversal. As we view the record in this case, there was never any real issue as to whether the nuisance, created by the defendant's city operation of the sewage plant, was a permanent or temporary one. No one contended that same was abatable as in the instance of temporary nuisances. The defendant's position all the way through the trial seems to have been merely that the operation of the plant was not a nuisance, and was in no respect injurious to plaintiffs; and that was the principal proposition its evidence was contemplated to show. Since the evidence relating to plaintiffs' third cause of action joined no issue as to whether the injuries to their property were temporary or permanent, defendant's complaint that Instruction No. 10 did not submit such issue to the jury, and that the court did not give its requested instruction on that subject, concerns harmless error, if error at all, and is insufficient ground for reversal. See Warren v. Steele, Okl., 344 P.2d 574; and, Farmers' Union Co-Operative Gin Co. v. Fairbanks, Morse & Co., 181 Okl. 336, 73 P.2d 1148.

In the present case, there was no evidence of direct physical injury to plaintiffs' land by the sewage plant operation (in this connection see 39 Am.Jur., "Nuisance", sec. 135, Note 9) and Mr. Eckroat testified that there was no decrease in the income from the crops grown on it after commencement of said operation. The closest approach to such evidence was his testimony to the effect that after the plant had been in operation a while, Crutcho Creek, which traverses part of said property, and which had formerly been clear, and furnished him a place to fish, and his children a place to wade, turned a greenish color, slime accumulated along its banks, and it was then inhabited only by turtles. Such evidence related to diminution in the property's usable value (as a farm home), but as this diminution was indicated to be continuous into the future (without surcease as long as the sewage plant operated) it was in the nature of prospective and permanent injury. Since the conditions, of which plaintiffs complained, appear to have grown progressively worse from the time the sewage plant operated until about the time the action was commenced, it was plaintiffs' prerogative to show the difference between the property's value before the plant started operating, and its value at the time their injuries had reached their maximum, during the two-year period immediately previous to the commencement, of the action. We therefore find no merit in defendant's third and last, above-mentioned complaint about the court's Instruction No. 10.

In view of the above demonstration that plaintiffs were entitled to damages, if any, as for a permanent injury to their land (as distinguished from a temporary one) defendant's position that the giving of Instruction No. 10 was erroneous on the remaining ground that it permitted assessment

of double damages cannot be upheld. We express no opinion with reference to the jury being allowed, by the giving of the court's Instruction No. 9, to award plaintiffs, in addition to damages for the permanent injuries to the property, an additional sum for personal inconvenience, discomfort, etc., as defendant does not charge that the giving of that instruction was error; and the only authority cited for its "double-damage" argument, Oklahoma City v. McAllister, 174 Okl. 208, 50 P.2d 361, was expressly overruled by Oklahoma City v. Eylar, 177 Okl. 616, 61 P.2d 649.

However, we may say in passing that some confusion on this subject has been caused by previous expressions of this court. For instance, in Oklahoma City v. Page, 153 Okl. 285, 6 P.2d 1033, 1038, we said:

> "The court was also asked to instruct the jury that if they found for the plaintiff they could not take into consideration in assessing the damages any *personal inconvenience or annoyance suffered by tenants of the plaintiff* proximately resulting from any wrong of the defendant. *The jury could not assess and allow damages for that annoyance and inconvenience* as such, but it does not follow that they could not take it into consideration in assessing the plaintiff's damages. *The annoyance and inconvenience had a bearing on alleged loss of use.* The refusal was proper." (Emphasis mine.)

What was said in the above quotation was proper in that particular case because the land involved there was occupied by tenants of the plaintiff and *she* could not correctly recover damages to their persons, or for injuries personal to them. As we said, the only way that their personal inconvenience and annoyance would have any bearing on her cause of action for damages to the property was in the matter of showing its loss of use, or useable value. That this is not true, where, as here, the property involved is occupied by plaintiffs during (at least part of) the continuance of the nuisance, is demonstrated in Daniel v. Ft. Worth & R. G. R. Co., 96 Tex. 327, 72 S.W. 578, where the property involved was occupied by the plaintiff and his family as a home, and the court held that he could recover both damages for his and his family's discomfort in the use of the home, and also damages for depreciation in its value. In so holding, the court said:

> "No case decided by this court justifies the conclusion that, if a structure, *permanent* in character, is a nuisance from which injury results to adjacent property, and by which nuisance the health of the occupants is impaired or the comfortable enjoyment of it is destroyed, the injured party is limited to compensation for the impairment of the value of the property. To the contrary, it is a rule of our law that full compensation may be awarded in one suit to the owner for all damages sustained from the same cause, and we see no reason why a party, damaged in the value of his property and in his health or the enjoyment of the property, should be denied the right to recover for either or both wrongs. The existence of a permanent nuisance may cause injury by destroying the comfort of a home and not cause loss in the market value of the property, or *it may cause injury to both;* hence adequate compensation must embrace all the damage done and no more." (Emphasis ours.)

See also Vestal v. Gulf Oil Corp., 149 Tex. 487, 235 S.W.2d 440, and the discussion in Kentucky West Virginia Gas Co. v. Lafferty (U.S.C.A., 6th Cir.) 174 F.2d 848, 852, 853 (and City of Holdenville v. Kiser, 179 Okl. 216, 64 P.2d 1223, cited therein) discussed in the Annotation at 10 A.L.R.2d 669, 670. Oklahoma City v. McAllister, 174 Okl. 208, 50 P.2d 361, does not demonstrate that this court has rejected the rule above referred to. In that case, the alleged nuisance was only a temporary one,

and the measure of the only damages for which plaintiff asserted a cause of action, was depreciation in the rental or useable value of the land in which such elements as annoyance and discomfort from stench were, by the very nature of his complaints, comprehended and included.

■ In its Proposition No. 4, defendant charges that the trial court erred in denying its requests, made during the trial, that the jury be directed to view the premises involved. Its brief sets forth some speculative representations as to the reason plaintiffs' counsel objected to such request, and as to the effects of the court's refusal to grant them. None of these statements are borne out by the record. We agree with plaintiffs that under Tit. 12 O.S. 1961 § 579, the jury's viewing of such property is a matter within the trial court's judicial discretion. It is not demonstrated that the trial court abused such discretion in the refusal complained of.

■ In its Proposition Nos. 5 and 6, defendant asserts that plaintiffs failed to show that it had notice that the operation of its sewage disposal plant was polluting Crutcho Creek and causing the odors complained of, and also failed to show that the State Health Department had notice of such results of the plant's operation, so that it might exercise the powers vested in it by Tit. 63 O.S.1961 § 614, to abate and/or regulate such nuisances. Without referring to the merits of these arguments, other than to note plaintiffs' undisputed proof that they presented a claim to the defendant for their damages before instituting this action, we think both of these propositions—as contended by plaintiffs—relate to questions not raised, or presented, to the trial court, and not encompassed in its judgment. They are therefore not to be determined in this appeal from said judgment. See Vitale v. Dunnett, Okl., 365 P.2d 122.

As none of defendant's arguments show cause for reversing said judgment, it is hereby affirmed.

DAVISON, WILLIAMS, JACKSON and IRWIN, JJ., concur.

JOHNSON, J., dissents.

HALLEY, V. C. J., concurs in part and dissents in part.