2003 OK CIV APP 15

**PESP/TSI STAFFING and Legion Insurance Co., Petitioners,**

v.

**Robert WEESE and The Workers' Compensation Court, Respondents.**

No. 96,716.

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 15, 2002.

Certiorari Denied Feb. 3, 2003.

**570**

David B. Windham, McClure Law Office, Oklahoma City, OK, for Petitioners.

Randall P. Robinson, Bryan and Robinson, Oklahoma City, OK, for Respondent Robert Weese.

## OPINION

ADAMS, Judge:

¶1 PESP/TSI, Inc.[1] and its insurance carrier, Legion Insurance Co. (collectively, Employer), seek review of a workers' compensation order which found Claimant Robert Weese had sustained an accidental personal injury arising out of and in the course of his employment and was temporarily totally disabled and entitled to workers' compensation benefits. We agree with Employer that the trial court's order is not supported by any competent evidence and vacate the order.

¶2 Claimant, an iron worker/welder for Employer, filed a Form 3 for multiple injuries he received on Thursday, April 26, 2000, in a car accident that occurred two hours after he and a co-worker left work in Texas. They were on the way to Oklahoma City where they planned to pick up their per diem checks from Employer's office mailbox and then go home. Employer filed an answer, denying Claimant's injuries "occurred in the course of and scope of his employment," and later moved for a trial on the issue of jurisdiction.

¶3 At the hearing, counsel for Claimant announced he was seeking determinations on jurisdiction and compensability "as one of the recognized exceptions to the going and coming rule." Counsel for Employer stipulated that Claimant was an employee covered by the Workers' Compensation Act and had sustained an injury on April 26, 2000, but denied that incident "arose out of and in the course and scope of his employment." In lieu of presenting the testimony of two witnesses, counsel for Claimant and Employer further stipulated to the following facts:

Claimant completed work at about 4:30 p.m.... [H]e was a passenger in a person-

---

1. The Form 3 listed "TSI Staffing c/o Interstate Builders" as Claimant's employer, and at the hearing on his claim, Claimant testified that he was employed by "Interstate Builders." The entry of appearance refers to "TSI Group Inc.," other instruments in the record refer to "TSI Staffing" and "PESP/TSI Inc.," and the order on appeal uses "PESP/TSI Staffing." We assume for purposes of this appeal that these variously named entities are one and the same.

al automobile driven by Mr. Robin Moore, [a co-worker], that . . . was involved in a motor vehicle accident five miles east of Chickasha on U.S. Highway 62 at approximately 6:15 p.m. . . . Claimant's route home was on U.S. Highway 62, and . . . they made no stops before the accident. . . . Claimant had a box of company welding rods in the car to keep them from being exposed to the elements. . . . Claimant had requested [Employer] to place his per diem check in the company mailbox in Oklahoma City so he could pick it up after work. . . . [Employer] did place the per diem checks in the company mailbox as requested by Claimant instead of FedExing them to the jobsite, which was normally done. . . . Claimant was not required by [Employer] to protect any welding rods left out on the job site.

¶ 4 Claimant, the sole witness at the hearing, testified that he resided in Oklahoma City and that during the three years prior to his accident the different construction sites upon which he worked for Employer were all located in Oklahoma City or Oklahoma County, except for two projects, a hospital in Durant, Oklahoma, and the post office in Wichita Falls, Texas (the Texas project). Claimant testified that he did not work the entire 3 weeks in Durant, but "for the period of time" he worked there, he rode with the foreman and was paid his regular hourly wage, $17.00 per hour, and an additional $4.05 per hour, which he identified as a "subsistence per diem."

¶ 5 Claimant testified that he and Moore decided to commute daily to the Texas project rather than use the per diem payments to cover lodging expenses. On the day of the accident, they left Oklahoma City at 4 a.m. and drove to the Texas project *via* the H.E. Bailey Turnpike, their usual drive both ways. From Employer's on-site office, they called Employer's office personnel in the Oklahoma City office "ahead of time" requesting them to put their per diem checks in the company mailbox located out in front of the office. After an 8½ hour workday, Claimant and Moore were "dismissed from the job site" around 4:30 p.m. Before leaving, Claimant placed an opened 50 pound box of welding rods into Moore's car so he "would have something to work with and they wouldn't

get ruined" by the weather. They drove back on the turnpike until they "ran out of money for the tollbooths to make it all the way to Oklahoma City." Claimant was asleep at the time of the accident, which occurred when Moore fell asleep at the wheel.

¶ 6 After the hearing, the trial judge found, in pertinent part, that "on APRIL 26, 2000, . . . claimant sustained accidental personal injury to the MULTIPLE BODY PARTS, including but not necessarily limited to, HEAD, PELVIS, FEMUR, RIBS and SPLEEN, arising out of and in the course of claimant's employment," but reserved issues regarding temporary total disability and permanent disability. A three-judge panel affirmed that ruling, but Employer's first review proceeding was dismissed by the Oklahoma Supreme Court because without an award or denial of benefits there was no reviewable order. After remand, the trial judge filed an order repeating its earlier finding and also finding Claimant temporarily totally disabled and awarding Claimant a lump sum for those benefits.

¶ 7 Employer then filed this review proceeding, alleging "there was no causal relationship between the act engaged in at the time the injury occurred and the requirements of the claimant's employment." Under a single proposition of error, Employer argues there is no competent evidence that Claimant's injuries occurred "in the course of his employment" because: (1) he had completed his job and was on a personal mission to drive back to the office to pick up his per diem check, (2) it was his sole decision to drive back and forth to the job site and he was not exposed to any greater risk on that day than any other day he had driven back and forth, and (3) he was not performing a duty pursuant to his job by transporting the welding rods.

¶ 8 Whether an employee's injury "arises out of" or "occurs in the course of" employment presents a non-jurisdictional issue of fact which is to be determined by the trial judge and must be affirmed by the reviewing court if supported by competent evidence. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, 958 P.2d 795. The burden of proof is on the claimant to show the disability for which compensation is sought was caused by an accident arising out

of and in the course of employment. *Barnhill v. Smithway Motor Express*, 1999 OK 82, 991 P.2d 527.

¶ 9 To be compensable, an injury must both occur (1) in the course of and (2) arise out of the worker's employment; these are distinct elements and are not to be understood as synonymous. *American Management Systems, Inc. v. Burns*, 1995 OK 58, 903 P.2d 288. The latter phrase contemplates the causal connection between the injury and the risks incident to employment, whereas the former phrase relates to the time, place or circumstances under which the injury is sustained. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, 653 P.2d 201.

¶ 10 As a general rule, injuries sustained by a worker while going to and coming from the workplace *do not* arise out of and in the course of employment within the meaning of the Workers' Compensation Act. *Stroud Municipal Hospital v. Mooney*, 1996 OK 127, 933 P.2d 872. This rule primarily results from the fact that going to and coming from work is the product of the employee's own decision of where he desires to live, a matter ordinarily of no interest to the employer, and that ordinarily a person's employment does not begin until he or she reaches the place of employment. *Barnhill v. Smithway Motor Express*, 1999 OK 82, 991 P.2d 527.

¶ 11 Oklahoma Courts have recognized several exceptions to the going and coming rule for off premises injuries, among them the "special task" exception referred to in *Mooney*. After acknowledging the general rule *and* agreeing with Employer that the facts of this case are undisputed, Claimant identifies the question of law presented for our review, "did the trial court ... correctly hold, as a matter of law, that [Claimant's] injury arose out of and in the course of his employment *under the special task exception to the coming and going rule*." (Emphasis added.) Therefore, we examine the facts in the light of that exception to the general rule and need not explore others not argued here or in the Workers' Compensation Court.

¶ 12 The applicability of the special task exception is ordinarily a question of fact.

However, where the facts necessary to establish the special task exception are undisputed, a question of law is presented. *Lucas v. Triad Drilling Company*, 1998 OK 98, 969 P.2d 363. According to *Mooney*, the special task exception is applicable when the accidental injury is sustained while the employee is going to perform, or leaving after performing, a special task outside of his or her regular working hours *and* at the employer's request.

¶ 13 Claimant first argues that the out-of-state assignment *itself* constitutes a "special mission" because there had only been one other occasion during his three years of employment where he was requested to work out of town. He claims that "[t]he trip to Wichita Falls, then, represented an out-of-the-ordinary special mission or task which he performed for the benefit of his employer." Claimant cites *Austin Drilling Company v. Rice*, 1980 OK CIV APP 28, 616 P.2d 446, and *Oklahoma Natural Gas Company v. Williams*, 1981 OK 147, 639 P.2d 1222, as support for the proposition that "when the type of work makes it necessary to drive and driving is viewed as a risk reasonably incident to the work, use of a vehicle owned by the employee or co-employee does not preclude compensation."

¶ 14 Claimant has not cited any Oklahoma authority holding that traveling to a different city or state to do the *same work* the worker routinely performs, *by itself*, constitutes a special task or mission, and the two cases he cites as authority do not support his argument. In *Austin*, the payment of travel and travel expenses exception was determinative, and the special task exception was not even considered.[2] In *Williams*, the claimant was injured in a car accident after attending the employer's Christmas party and while driving to a babysitter's house. After finding record support for implied compulsion and employer benefit for employee's attendance at that social/recreational event, the *Williams* Court considered the employer's deviation argument and held that the special task exception to the going and coming rule governed the case, explaining "[the claimant] undertook to attend the Christmas party in

2. The *Austin* claimant, a member of an oil well drilling crew, was driving his own car to and

furtherance of his master's business, and as an incident of his employment. The travel bears all the indicia of *special duty mission that lies outside the work routine*-an off-premises mission with the attendant extra risk." (Emphasis added.) *Williams*, 1981 OK 147, ¶ 23, 639 P.2d at 1227.

¶ 15 For the special task or mission exception to apply, one must be performing extra work *outside of regular working hours* that is different from or unrelated to the work required in the usual and ordinary course of employment. *See Harris v. La-Quinta*, 1997 OK 50, 937 P.2d 89; *Richardson v. Pitts*, 1965 OK 174, 408 P.2d 327; *Dawson v. Oklahoma City Casket Company*, 1958 OK 29, 322 P.2d 642. When addressing the existence of an employer-employee relationship, the Court in *Fluor Engineers & Contractors v. Kessler*, 1977 OK 37, 561 P.2d 72, discussed the going and coming rule and some of its exceptions and concluded none applied in that case, stating *"[n]either can driving from [a worker's] home to another job in a different city be held to be a 'special task.'"* (Emphasis added.) We can find no evidence in this record establishing that Claimant was performing any different work at the Texas project than he did at any other construction sites, and his decision to drive to the Texas project does not make that job a special task.

¶ 16 Claimant further argues that when the accident occurred, he and Moore were *"charged with the task* of retrieving their per diem checks, which were necessary for their daily commute back and forth between their home and the distant job site." (Emphasis added.) Considering the parties' stipulation that *Claimant requested Employer* to place his per diem check in the company mailbox in Oklahoma City so he could pick it up after work and that Employer normally sent these checks *via* Fed–Ex or mail, Claimant's argument must fail.

¶ 17 Claimant's final argument is that *even in the absence of any specific instruction* to do so, his decision to safeguard the welding rods conferred a direct benefit to Employer. However, the cases Claimant cites to support

from work when he was injured in an automobile accident on a public road. Unlike this case, the *Austin* claimant was paid $11.00 per day as "travel pay," which the evidence established was

this argument, *Skinner v. Braum's Ice Cream Store*, 1995 OK 11, 890 P.2d 922, and *Haco Drilling Co. v. Burchette*, 1961 OK 145, 364 P.2d 674, involve an employer's liability for an employee's negligent acts, wherein incidental benefit to an employer may be considered to impose liability on the employer under *respondeat superior*. They have no application in a workers' compensation context.

¶ 18 The record contains no competent evidence to support the application of the special task exception. Therefore, the trial court order is not supported by any competent evidence and is vacated.

VACATED.

HANSEN, P.J., dissents, and MITCHELL, J., concurs.

"for his transportation expenses and time consumed in traveling to and from work." In this case, Claimant admitted he was not paid for his travel to and from the job.